**AMERICAN MAIL LINE, LTD., et al.,**
**Appellants,**

v.

**James W. GULICK et al., Appellees.**

**No. 22091.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 17, 1968.

Decided Feb. 17, 1969.

Mr. Warner W. Gardner, Washington, D. C., for appellants. Messrs. Robert T. Basseches and David Booth Beers, Washington, D. C., also entered appearances for appellants.

Mr. Leonard Schaitman, Attorney, Department of Justice, with whom Asst. Atty. Gen. Edwin L. Weisl, Jr., Messrs. David G. Bress, U. S. Atty., and John C. Eldridge, Attorney, Department of Justice, were on the brief, for appellees.

Before BAZELON, Chief Judge, PRETTYMAN, Senior Circuit Judge and TAMM, Circuit Judge.

TAMM, Circuit Judge:

The appellants in this action are steamship operators doing business pursuant to Title VI of the Merchant Marine Act of 1936 (49 Stat. 1985, 46 U.S.C. §§ 1171–1183a (1964)). The Act allows American shipowners to apply to the United States Government for financial aid in the operation of vessels which are to be used in an essential service in the foreign commerce of the United States. This financial aid is termed "operating-differential subsidies." Succinctly, these subsidies represent the percentage by which the estimated fair and reasonable cost of operation of a United States flag vessel with an American crew exceeds the estimated cost of operation of the same vessel with a foreign crew. 46 U.S.C. §§ 1171, 1173 (1964). The Secretary of Commerce is statutorily empowered to administer this "operating-differential subsidy program." At present, the program is administered by the Maritime Administration, the Maritime Administrator, and the Maritime Subsidy Board of the Department of Commerce. *See* Department of Commerce Order 117–A, 31 Fed.Reg. 8087 (1966). In the specific context of this case Chairman Gulick is also contemporaneously serving as the Acting Maritime Administrator. These parties will hereinafter be referred to jointly as "the Board."

The appellants operate nine ships (C–4 conventional design vessels) which are the subject of this litigation. These vessels began operation at various times between 1961 and 1965 and are all currently in operation. Pursuant to the aforementioned statute appellants had been receiving subsidies for the operation of their ships. At all times prior to this litigation these ships were operated by fifty-eight man crews. The crew size is determined by a procedure which involves the ship owners submitting applications of "vessel manning scales," which must be approved by the Board.[1] On April 12, 1968, the Board

1. Each subsidy contract (between the United States and the shipowner) contains a clause (article 1–4) which states that the "operating-differential subsidy" shall be equal to the fair and reasonable cost, as determined by the Board, of wages and subsistence of both officers and crews (J.A. 40–41). We do not find that the Board did not have the right to allow only fifty-man crews; rather, we find that the Board did not implement that right in a procedurally acceptable manner.

697

sent a letter to each of the appellants informing each of the action taken by the Board on April 11, 1968 (J.A. 7–11). This action of April 11 (recorded only in the form of minutes of the Board's meeting) constituted an assessment or evaluation by the Board that crews of fifty men were "fair and reasonable and necessary" but that costs incurred for the eight other crew members employed by appellants were "not fair and reasonable and not necessary for the efficient and economical operation of the vessels * * *" (J.A. 9, 65). In this decision the Board specifically stated that it was basing its ruling upon a "memorandum dated November 26, 1965, revised December 20, 1967." It then set forth the last five pages of this memorandum as its own finding and determination. Subsequently, on April 18, 1968, in implementation of this decision, appellants were "ordered" to refund approximately $3,300,000 in past subsidy payments.[2] On April 22, 1968, appellants filed with the Board a petition for reconsideration of its April 11 ruling (J.A. 42–45). On April 29, 1968, appellants moved for a stay of the April 18 order. On May 16, 1968, the Board officially granted appellants a stay of the "direction" to refund the aforementioned sum of money (J.A. 56–58).

In an attempt to formulate a meaningful argument in their petition for reconsideration the appellants on May 7, 1968, requested a statement of the Board's reasons for its decision and a summary of the evidence before it (J.A. 46–49). This request was denied by letter of May 16, 1968 (J.A. 56–58). Later, on May 21, 1968, appellants filed with the Board an "application to inspect records" and included in the alternative a renewed request for the reasons for and a summary of the evidence upon which the Board based its ruling (J.A. 12–13). This request was denied by letter on May 29, 1968, but the Board in this letter offered to and later did provide appellants with "extensive records" dealing with "vessel manning scales" (J.A. 57–63, 52–53, district court transcript at 6, Reply Brief for Appellants at 8).[3] Upon this final refusal either to produce the memorandum referred to in the April 11 ruling or to produce the reasons for the decision together with a summary of the evidence acted upon, appellants filed suit on June 3, 1968, in our district court under the Freedom of Information Act (5 U.S.C. § 552 (Supp.III, 1965–1967)).[4]

## I  DISTRICT COURT PROCEEDINGS

Appellants precipitated this action in the district court by filing a pleading entitled "complaint for injunction against withholding, and for order giving access to, Government information." This complaint was based solely upon the Freedom of Information Act and did not ask for relief independently of the Act upon due process grounds. Subsequently, on June 7, 1968, appellants filed a "motion for preliminary injunction" together with a "memorandum of points and authorities in support of plaintiffs' motion for preliminary injunction." In this pleading appellants did urge, in a cursory paragraph, that the injunction be granted on due process grounds independent of the Act. The Government's responsive motion, id est, "motion to dismiss or for summary judgment and opposition to plaintiffs' motion for preliminary injunction," dealt with the case solely upon the

2. This letter makes evident the immediate effect of the Board's decision. In fact, in the letter of May 16th granting the appellants a temporary stay of this order the Board implies that but for a misunderstanding of a subordinate officer no stay would have been granted (J.A. 56–58).

3. In the May 29th letter the Board also stated that when it issued its decision on appellants' petition for reconsideration it would issue a "formal opinion" in which it would present a "discussion and explanation of the reason for the conclusions reached by the Board * * *" (J.A. 58–59). On November 18, 1968, the Board issued its opinion on reconsideration, but we feel that its issuance has little effect on the disposition of this case (see part III infra).

4. See "jurisdictional statement" in appellants' complaint for injunction in the trial court.

Freedom of Information Act ground. Appellants then culminated the proceedings below by filing a "cross-motion for summary judgment" together with a "plaintiffs' reply to defendant's memorandum in support of motion to dismiss or for summary judgment." Oral argument was heard upon the cross-motions for summary judgment on July 1, 1968, before the Honorable Howard F. Corcoran and, after taking the pleadings under advisement, he granted the appellee's motion and denied appellants' motion. Appellants now seek review of this action.

It is important to note that appellants only peripherally argue for relief independent of the Act. The Government does not treat this issue at all and in fact it stated below that "[t]he complaint is based solely upon 5 U.S.C. § 552" (memorandum of points and authorities in support of motion to dismiss or for summary judgment at 2). The due process ground was not mentioned in oral argument below and appellants presented no authority for such relief to the learned trial judge upon which a due process right could have been bottomed; consequently, we do not consider this ground for reversal here on appeal.

■■■ We note in passing that the district court, of course, is invested with general equity powers which it *could* utilize to require an administrative agency to give reasons for its decision. The party requesting such action, however, must meet all the criteria for the issuance of an injunction. *See generally*

Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923); Champlin Refining Co. v. Corp. Comm'n of Oklahoma, 286 U.S. 210, 52 S.Ct. 559, 76 L.Ed. 1062, 86 A.L.R. 403 (1932); Virginia Petroleum Jobbers Association v. FPC, 104 U.S.App.D.C. 106, 259 F.2d 921 (1958); Daigle v. Continental Oil Co., 277 F.Supp. 875 (W.D.La.1967).

## II FREEDOM OF INFORMATION ACT

■■■ The Freedom of Information Act was promulgated in 1966 (80 Stat. 250) with a stipulation that it would not take effect until July 4, 1967, (81 Stat. 54) and it is now codified in 5 U.S.C. § 522 (Supp. III. 1965–1967). An exploration of the legislative history behind this enactment reveals that the premier purpose of the Act was to elucidate the availability of Government records and actions to the American citizen. In addition, Congress sought to eliminate much of the vagueness of the old law (section three of the Administrative Procedure Act of 1946, 60 Stat. 238).[5] The Senate Report characterized the purpose of the Act as follows (S.Rep.No. 813 at 2–3):

> Knowledge will forever govern ignorance, and a people who mean to be their own governors, must arm themselves with the power knowledge gives. A popular government without popular information or the means of acquiring it, is but a prologue to a farce or a tragedy or perhaps both.

With this noble purpose we wholeheartedly agree. Unfortunately, none of the

---

5. It has been authoritatively stated in the most expansive treatment of this Act that "probably more than ninety-five per cent of the useful legislative history is found in a ten page Senate committee report and in a fourteen page House committee report. * * *" K. Davis, The Information Act: A Preliminary Analysis, 34 U.CHI.L.REV. 761, 762 (1967). The aforementioned Senate Report (S. Rep.No. 813, 89th Cong., 1st Sess. (1965)), and the House Report (H.R. Rep.No. 1497, 89th Cong., 2d Sess. (1966)), and a forty-seven page Department of Justice publication entitled Attorney General's Memorandum on the Public Information Section of the Administrative Procedure Act, together with Professor Davis' article, constitute the major analyses of the Act and have been studied carefully. See also T. Sky, Agency Implementation of the Freedom of Information Act, 20 AD.L.REV. 445 (1968); Staff of Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee, 90th Cong., 2d Sess., The Freedom of Information Act (Ten Months Review) (Comm.Print 1968); Comment, The Freedom of Information Act: Access to Law, 36 FORDHAM L.REV. 765 (1968).

**700**

aforementioned legislative history is specifically addressed to the particular problem with which we are confronted. In addition, the judicial interpretation of the Act is equally unrevealing. We are unable to find any direct authoritative interpretation of this issue in this jurisdiction.[6] Other jurisdictions provide no further enlightenment.[7] The question which must be decided is whether an administrative agency may take affirmative action against a private party by means of a decision in which it states that the only basis for such action is a certain specified memorandum and then refuse to disclose the memorandum to the party affected by the action.

The Maritime Subsidy Board took such action on April 11, 1968, in which it ordered (by letter of April 12, 1968) appellants to refund approximately $3,300,000 in subsidy payments. This administrative decision had a direct and immediate effect upon appellants. More specifically, the April 11 determination read as follows (J.A. 65);

> The Maritime Subsidy Board considered memorandum dated November 26, 1965, revised December 20, 1967, recommending that the Board approve for subsidy purposes manning scales for the conventional C-4 design type vessels. * * * After discussion * * the * * * Board found and determined with respect to each of the C-4 conventional type vessels and opera-

tors * * * that effective with the date each vessel entered into the subsidized service: (Quote Recommendations I thru IV, pages 27 thru 30). Thereafter, Chairman Gulick announced that in his capacity as Acting Maritime Administrator he had found and determined that: (Quote Recommendation V, pages 30 and 31). Copy of the foregoing memorandum * * * (is) in the files of the Secretary * * *.

The above referred to "recommendations" were then reprinted in letters sent to appellants on April 12, 1968, which stated in pertinent part (J.A. 7-11):

> Gentlemen: The Maritime Subsidy Board, on April 11, 1968, found and determined * * * that, effective with the date each vessel entered into the subsidized service * * * [o]n the basis of existing evidence on hand * * * the cost of wages and subsistence (of the following employees) * * * is not fair and reasonable and * * * shall be disallowed for subsidy rate-making and subsidy payment purposes. * * * Your attention is invited to the provisions of Section 6 of the Department of Commerce Order No. 117-A * * *.

The above quoted excerpts make it readily apparent that the agency issued its April 11 ruling based substantially upon a thirty-one page memorandum prepared

6. Cuneo v. McNamara, Civ.Action No. 1826-67 (D.D.C.1967); Kovic v. Gardner, Civ.Action No. 2008-67 (D.D.C. 1967); Bandy v. Commissioner of Immigration and Naturalization Service, Civ.Action No. 2239-67 (D.D.C.1967); The Tobacco Institute v. FTC, Civ.Action No. 3035-67 (D.D.C.1967); Bristol Myers Co. v. FTC, Civ.Action No. 2905-67 (D.D.C.1967), appeal docketed, No. 22257, D.C. Cir., August 30, 1968; Matonis v. Food and Drug Administration, Civ. Action No. 479-68 (D.D.C.1968).

7. Barceloneta Shoe Corp. v. Compton, 271 F.Supp. 591 (D.Puerto Rico 1967); Shell Oil Co. v. Udall, Civ. Action No. 67-C-321 (D.Colo.1967); Clement Brothers Co. v. NLRB, 282 F.Supp. 540 (N.D.Ga.

1968); Benson v. General Services Administration, 289 F.Supp. 590 (W.D. Wash.1968); Cook v. Willingham, Civ. Action No. L-235 (D.Kan.1968); Meyer v. Brenner, Civ. Action No. 67-C-1729 (N.D.Ill.1968); Martin v. Neuschel, 396 F.2d 759 (3d Cir. 1968); Aeromoter, Inc. v. Department of Labor, Civ. Action No. 43250 (E.D.Pa.1967).

On January 16, 1969, Tuchinsky v. Selective Service System (N.D.Ill.1969) was decided 294 F.Supp. 803. The court held that the agency was required under 5 U.S.C.A. § 552(a)(2) to disclose and allow plaintiff to copy certain memoranda. Thus the court judicially enforced, as we do, paragraph (a)(2) of the Act. See Tuchinsky v. Selective Service System, supra, 294 F.Supp. 803.

by its staff. In order to conserve time and energy the agency then clipped off the last five pages of this memorandum and recorded it as its own "finding and determination" in the matter and sent it along, *in haec verba,* to appellants by letter of April 12.

We feel compelled to note at the outset of our discussion that we do not consider the Board's action in this case either a usual or commendable administrative practice. It is indeed a unique case, and must be dealt with as such.

■■■ In order to reach the determination that we do a threshold ambiguity must be resolved. The first sentence of 5 U.S.C. § 552(a)(3) does not indicate clearly whether judicial enforcement is available for paragraphs (1) and (2) of subsection (a) as well as for paragraph (3). Paragraph (3) states in pertinent part:

> Except with respect to the records made available under paragraph (1) and (2) of this subsection, each agency, on request for identifiable records * * * shall make the records promptly available to any person. On complaint, the district court of the United States * * * has jurisdiction to enjoin the agency from withholding agency records * * *.

We interpret this paragraph as meaning that except with respect to records *the agency* has made available under paragraphs (1) and (2) in compliance with that portion of this Act, the agency must make all other identifiable records available (unless exempted by subsection (b)) or face judicial compulsion to do so. In other words, if the agency refuses to comply with paragraphs (1) or (2) it is then subject to suit under the processes spelled out in paragraph (3). The only viable interpretation of this paragraph is that the judicial process is available to compel the disclosure of agency records *not* made available under paragraphs (1) and (2) as well as the agency records referred to in paragraph (3). Congressional intent (although not spelled out directly anywhere) seems to have been that judicial review would be available for a violation of any part of the Act, not merely for subsection (3).[8]

We feel that Congress was merely trying to distinguish between two different types of agency records, not attempting to limit judicial review; otherwise, Congress would have created a right without a remedy. In so construing this statute we recognize that the last sentence in paragraph (2) does contain a sanction, but we feel it was not meant to be an exclusive one.[9] Surely Congress did not intend to protect parties against an agency relying on a decision or order

---

8. The Senate Report states that "section three gives to any aggrieved citizen a remedy in court" (S.Rep. No. 813 at 6). In passing favorably on amendment number two, which adds the "except clause," the Senate Report states that "this is a technical amendment to emphasize that the agency records made available by (paragraphs (1) and (2)) are not covered by (paragraph (3)) which deals with other agency records * * *" (*Id.* at 2). The House Report states that "[t]he court review procedure would be expected to persuade against the initial improper withholding and would not add substantially to crowded court dockets * * *" (H.R. No. 1497 at 2). For a further discussion of this ambiguity *see* K. Davis, *supra* note 5, at 775–776. *See also* Attorney General's Memorandum, *supra* note 5, at 15, 23. Thus, we base our interpretation on a construction of the statute itself and the House and Senate reports, which are the three most authoritative sources of legislative intent. *See* United States v. O'Brien, 391 U.S. 367, 385, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

9. The last sentence of paragraph (2) reads as follows:

> A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by an agency against a party other than an agency only if— (i) it has been indexed and either made available or published as provided by this paragraph; or (ii) the party has actual and timely notice of the terms thereof.

This, of course, provides no remedy when the agency refuses to disclose part of a

as precedent for future agency action without providing a process by which the agency could be compelled to disclose the contents of the decision or order (in its entirety) to the very parties against which it was issued. In any event, the memorandum in this case is clearly an identifiable record and since we hold that it is not an intra-agency memorandum (nor does it fall within any of the other exemptions) it is being improperly withheld by the Government and must be ordered to be produced for public inspection by our district court.

The Act specifically states that the agency must disclose to any person upon request all "final opinions  *  *  * as well as orders, made in the adjudication of cases" (5 U.S.C. § 552(a)(2) (A)). Appellants contend that the April 11 decision, transmitted by the letter of April 12, constituted an order to them. Further, they assert that the Board, by stating in unqualified terms that its action was based upon a certain specified memorandum, thereby incorporated· that memorandum into its administrative decision of April 11–12. We agree with appellants' contention.

It is important to note here that under this Act the burden of proof is not upon the appellants; rather, the Act provides that "[i]n such a case the court shall determine the matter de novo and the burden is on the agency to sustain its action  *  *  *"  (5 U.S.C. § 552(a)(3)). In particular, the Maritime Subsidy Board has failed to meet this burden. Neither in its brief nor upon oral argument did it show that its April 11 ruling did not have immediate operative effect. Appellants were ordered to refund approximately $3,300,000 and this order was stayed only pending the Board's decision on reconsideration. We need not reach consideration, however, of the much contested issue of whether the April 11 ruling was final,[10] since the Act requires disclosure of all "orders, made in the adjudication of cases  *  *  *." [11]

In order to avoid discovery under this subsection of the Act appellee must show that the memorandum was not incorporated into its action because it was and is an "intra-agency memorandum." Indeed, appellee urges that it is exempt from discovery because it is an "intra-agency memorandum(s)  *  *  * which would not be available by law to a party other than an agency in litigation with the agency" under 5 U.S.C. § 552 (b)(5). We find this contention unpersuasive. This exemption involved

---

decision or order (or any other affirmative action it takes against a citizen) to the party affected by it or in any other way fails to comply with paragraphs (1) or (2). We recognize also that agency noncompliance with paragraphs (1) or (2) involving disclosure rather than publication in the Federal Register is unlikely and will probably involve rare situations such as the one with which we dealt today.

10. The Board argues that its determination of vessel manning scales and its order to refund past subsidy payments is merely an intermediate step in the overall determination of the subsidy wage rates to be awarded (Brief for Appellees at 8, 42–43). It further states that when the subsidy is actually awarded appellants may contest that award and they are then entitled to a full administrative hearing under 46 U.S.C. § 1176(1) (1964). Although the April 11 ruling has immediate and operative effect, we need not re-

solve the thorny question of whether or when appellants are entitled to a full hearing under the dictates of the Administrative Procedure Act (5 U.S.C. § 500 et seq., Supp. III, 1965–67). That issue must be fully briefed when this case is decided on the merits, not in this action under the Freedom of Information Act. It is sufficient for this case that the Board's ruling of April 11 was an "order(s), made in the adjudication of cases" (5 U.S.C. § 552(a)(2)(A)) and that the memorandum in question was not an intra-agency memorandum within the meaning of 5 U.S.C. § 552(b)(5).

11. 5 U.S.C. § 551(6) defines an "order" to mean "the whole or any part of a final disposition  *  *  * of an agency in a matter other than rule making  *  *  *." Since the April 11 ruling (as implemented by letters of April 12th and 18th) ordered appellants to refund approximately $3,300,000 it clearly constituted an order issued in an adjudicative matter.

great deliberation, disagreement, and discussion in Congress during its enactment process.[12] Upon inspection of this legislative background we fully recognize and agree that

a full and frank exchange of opinions would be impossible if all internal communications were made public. They (agency witnesses) contended, and with merit, that advice from staff assistants and the exchange of ideas among agency personnel would not be completely frank if they were forced 'to operate in a fishbowl.' Moreover, a Government agency cannot always operate effectively if it is required to disclose documents or information which it has received or generated before it completes the process of awarding a contract or issuing an order, decision or regulation. This clause (5 U.S.C. § 552(b)(5)) is intended to exempt from disclosure this and other information and records wherever necessary *without, at the same time, permitting indiscriminate administrative secrecy.* (Emphasis supplied.)[13]

We do not feel that appellee should be required to "operate in a fishbowl," but by the same token we do not feel that appellants should be required to operate in a darkroom. If the Maritime Subsidy Board did not want to expose its staff's memorandum to public scru-

tiny it should not have stated publicly in its April 11 ruling that its action was based upon that memorandum, giving no other reasons or basis for its action. When it chose this course of action "as a matter of convenience" (Brief for Appellee at 9) the memorandum lost its intra-agency status and became a public record, one which must be disclosed to appellants. Thus, we conclude that the Board's April 11 ruling clearly falls within the confines of 5 U.S.C. § 552(a)(2)(A) and consequently it must be produced for public inspection.

Another aspect of this controversy merits discussion. Appellants argue that even if this memorandum is an intra-agency one it is one which would "be available by law to a party other than an agency in litigation with the agency" (5 U.S.C. § 552(b)(5)). Since we hold today that this memorandum is no longer "intra-agency" we need not and do not reach consideration of this allegation.

Appellee urges one final contention. It argues that we are bound by this court's earlier decision in Freeman v. Seligson, 132 U.S.App.D.C. 56, 405 F. 2d 1326, decided June 28, 1968. We find, however, that this case is not controlling.[14] We note in passing that exemption (b)(5) seems to involve a balancing of appellants' need with the Government's right of privilege.[15]

12. *See, e. g.,* S. 1666, 88th Cong., 1st Sess. (1963); S.Rep. No. 1219, 88th Cong., 2d Sess. (1964); 110 Cong.Rec. 17666-7 (1964); 112 Cong.Rec. 13640 (1966); Hearings before the Subcommittee on Administrative Practice and Procedure of the Senate Judiciary Committee On S. 1160, S. 1336, S. 1758, and S. 1879, 89th Cong., 1st Sess. (1965), at 406, 437, 446, 450.

13. H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10 (1964). *See also* S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965).

14. In *Seligson* the court did not decide whether documents could be obtained under the Act. In fact, the court stated, while discussing the Act only in passing, that "[w]hile inapplicable to this litigation, the history of this legislation re-

flects current congressional policy regarding public access to governmental records * * *." Freeman v. Seligson, 405 F.2d at 1339, n. 70.

15. *See generally* Pacific Far East Line, Inc. v. United States, 394 F.2d 990, 184 Ct.Cl. 169 (1968); Lykes Bros. Steamship Co. v. United States, Ct.Cl. No. 399-67 (1968); Weiss v. United States, 180 Ct.Cl. 863 (1967); Bank of Dearborn v. Saxon (E.D.Mich.1965), aff'd sub nom., Bank of Dearborn v. Mfrs. Nat'l. Bank of Detroit, 377 F.2d 496 (6th Cir. 1967). *But see* Kaiser Aluminum & Chemical Corp. v. United States, 157 F.Supp. 939, 141 Ct.Cl. 38 (1958); V.E.B. Carl Zeiss, Jena v. Clark, 128 U.S.App.D.C. 10, 384 F.2d 979, cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

### III Motion to Dismiss as Moot

While this opinion was in the printing process (over one month after oral argument) the appellees filed a "motion to dismiss as moot." The basis of this motion was that the Maritime Subsidy Board had issued on November 18, 1968, a "final opinion and order" denying appellants' petition for reconsideration and setting forth the reasons for such denial in a forty-three page decision. Appellants, of course, filed a "reply to motion to dismiss as moot." We hereby deny appellees' motion.

The issuance of the Board's decision does not render this cause of action moot for the simple reason that appellants lack of need for the memorandum is irrelevant to their right to obtain it under the Act. Further, because we hold that the Board's memorandum is an identifiable record made available by the Act, it is now available to any member of the public, notwithstanding his or her lack of need for it. It is also not without significance that we do not have the power under the Act to order the Board to give its reasons for its decision unless those reasons are embodied in an "identifiable record." In short, we feel that the issuance of this decision compounds the Board's lamentable administrative practices and procedures. Appellants were forced to prepare a petition for reconsideration of the Board's April 11 ruling without knowledge of any of the reasons for that ruling. Now, the Board renders its decision upon reconsideration affirming its April 11 ruling and gives reasons for such decision. It seems to us, however, that logic would dictate that the reasons for the disposition of a certain issue, *id est*, a determination that fifty rather than fifty-eight man crews are reasonable for certain vessels, should be given before and not after the parties are required to prepare and submit a petition for reconsideration of that determination. This court is unaware of how a party can meaningfully prepare a request for reconsideration of a decision which contains no reasons for its determination. Further, as appellants argue, the November 18 decision seems to rely upon considerations which appellants did not and could not have been expected to foresee. The backwardness of appellee's administrative procedure is appalling.

At this point it must be emphasized once again that this case is not here before us for disposition upon the merits. As we previously stated, the action was brought in our district court under the Freedom of Information Act on a very limited basis, *id est*, a request for disclosure of an identifiable document. This court, in this particular case, recognizes the "procedural morass" within which we are required to act. We are, however, without power to evaluate this case upon its merits. A full and complete record, brought to this court through the correct procedural process, is necessary for a disposition on the merits. As much as the administrative procedure applicable to this case seems to be in dire need of clarification, this cause of action is not the proper instance in which to illuminate this dimly lit area of the law. Thus, the memorandum must be disclosed for appellants' inspection. Its value to appellants is, of course, lessened now that the Board has chosen to issue its decision upon reconsideration before our disposition of this case.

We conclude that the Board's ruling of April 11 transmitted to appellants by letter of April 12 constitutes a decision and order within the meaning of 5 U.S.C. § 552(a)(2)(A). Moreover, we find that the "memorandum dated November 26, 1965, revised December 20, 1967," upon which the Board based its decision and order, was thereby incorporated into that agency action and must be produced for public inspection by the appellants. We therefore reverse the district court and order it to grant appellants' motion for summary judgment.

Chief Judge Bazelon would hold that, in the peculiar circumstances of this case, appellants are entitled to the staff memorandum under subparagraph (3) of 5 U.S.C. § 552(a), which

provides that "each agency, on request for identifiable records * * * shall make the records promptly available to any person." He notes that under that subparagraph, the burden was on the Board to show that the memorandum was exempt from the provisions of the Freedom of Information Act, and that the underlying policy of the Act militates in favor of production in doubtful cases. In the instant case the Board's minutes show that the memorandum was the sole ground of its decision; further, the Board's decision and order consist entirely of the last five pages of the memorandum. On these facts he concludes that the Board did not show that the memorandum retains its original character as an intra-agency (and therefore exempt) memorandum under § 552(b)(5). He is confirmed in this conclusion by his inability to discover any relevant countervailing policy consideration, since if the Board wished to preserve anonymity for the views of individual staff members, it had only to comply with appellants' prior (and continuing) request for a statement of the reasons for its decision. He would also note that the Board's unexplained refusal to give any reason at all for its action, even if legally permissible, does not incline a court to give it the benefit of any doubt. Finally, he thinks this appeal is not moot even if appellants no longer have any need for the memorandum, since under the Freedom of Information Act any member of the public is entitled to have it without regard to need.

JUDGE PRETTYMAN would hold, in the first place, that the case is moot and the appeal should therefore be dismissed. The complaint, as filed in the district court, was in the alternative; plaintiffs asked for a copy of the memorandum or, in the alternative, for a statement of the Board's reasons for its action. They have been given a statement which the Board says were its reasons. Thus the complaint has been satisfied. Of course not all the questions aroused by the controversy have been answered, but this action, as pending in court, has become moot since its prayer has been satisfied. On the merits Judge Prettyman reaches the same result as does the court, but by a different route. He says (1) that, when an agency recites that it bases a certain decision upon a certain described memorandum, the memorandum ceases to be a protected intra-agency memorandum and must be shown to the interested public, and (2) that an agency must state the reasons upon which it bases so emphatic an order as a direction to refund $3,000,000 to the Government, especially when the agency asserts that it has reasons for its action and that the reasons are embodied in a certain written document. To his mind these propositions are so obvious as not to require involved reasoning for explanation or support. Surely, he says, the Freedom of Information Act, even if it goes no further, buttresses these clear propositions; it does not negate them. He concurs in the result reached in this portion of the opinion.

Reversed and remanded.