NATIONAL PRISON PROJECT OF the AMERICAN CIVIL LIBERTIES UNION FOUNDATION, INC., Plaintiff,

v.

Maurice H. SIGLER and United States Board of Parole, Defendants.

Civ. A. No. 74-31.

United States District Court, District of Columbia.

Jan. 17, 1975.

Victor H. Kramer, Richard B. Wolf, John H. Harwood, II, Institute for Public Interest Representation, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., S. Cass Weiland, Atty., Dept. of Justice, Washington, D. C., for defendants; Joseph A. Barry, Patrick J. Glynn, U. S. Bd. of Parole, of counsel.

## MEMORANDUM OPINION

WADDY, District Judge.

Plaintiff National Prison Project of the American Civil Liberties Union Foundation, Inc. is a nonprofit organization which advises and represents inmates of federal penal institutions. Plaintiff and its counsel are also engaged in a general study of the federal parole system and the manner in which parole applications are processed by the United States Board of Parole. This action is brought against the Board and its Chairman pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Plaintiff claims that the Board is in violation of section 552(a)(2) of the Act by failing to make available for public inspection and copying the records containing the final opinions of the agency denying inmates' applications for parole.

Defendants initially responded to the complaint with a motion to dismiss relying primarily on the argument that the Board of Parole is not an agency subject to the provisions of the Administrative Procedure Act, of which the FOIA is a part. Upon the representation of counsel that this same issue was pending before this Circuit's Court of Appeals in Pickus v. United States Board of Parole, 507 F.2d 1107 (D.C.Cir.1974), the Court stayed all proceedings in the instant action until a decision had been reached in *Pickus*. On October 11, 1974, the Court of Appeals entered its decision, holding, *inter alia,* that the Board is indeed an agency within the purview of the APA and that its actions are subject to judicial review. Defendant's petition for rehearing was denied on December 10, 1974.

The parties have filed cross-motions for summary judgment which are now

at issue. These motions, in addition to defendants' original motion to dismiss, are before the Court for disposition. Upon consideration of the undisputed material facts in this case, and for the reasons explained below, it is the conclusion of the Court that summary judgment should be granted for plaintiff.

### FACTS

In October, 1972, the Board of Parole instituted a pilot project pursuant to which the Board informed prisoners of the reasons why their applications for parole were denied. See 28 C.F.R. § 2.-13(d).[1] The program was first initiated on October 1, 1973, in the Board's northeast region. The same policy was expanded to nationwide coverage beginning October, 1974.

By letter dated October 1, 1973, counsel for plaintiff requested a copy of the reasons for denial of parole given in the first case decided under the new policy. On November 1, 1973, defendant Sigler furnished the requested documents to counsel for his personal use,[2] but added that the Board did not consider these documents to be subject to the public disclosure requirements of the Freedom of Information Act. Subsequently, counsel for plaintiff visited the principal office of the Parole Board in Washington, D. C., and ascertained that materials allegedly required to be available to the public pursuant to section 552(a)(2) of the Act were not kept on file for inspection.[3]

### · LAW

Section 552(a)(2) of the Freedom of Information Act provides in pertinent part that:

(2) Each agency, in accordance with published rules, shall make available for public inspection and copying—

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases . . .

The 1974 amendments to the Act require, in addition, that each agency maintain a public index providing identifying information as to matters issued, adopted or promulgated after July 4, 1967, and which are required to be made public under the above-quoted provision of the statute. Defendant argues that the Parole Board's statement of reasons for denying parole applications are exempt from disclosure because: (1) the process by which the Board determines whether or not parole should be granted is not an adjudication; (2) the statements of reasons are neither opinions nor orders of the agency; and (3) exemption (b)(6) of the FOIA, pertaining to the non-disclosure of files which would constitute a clearly unwarranted invasion of privacy, bars publication of these decisions.

### I.

■ Under the APA an adjudication "means agency process for the formulation of an order." 5 U.S.C. § 551(7). An order, in turn, "means the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C. § 551(6). These circular definitions are elucidated only slightly by the legislative history, which indicates that an agency adjudication represents the judicial, rather than

---

1. The decision denying parole usually consists of a short, general statement of reasons (e. g., "Your release at this time would depreciate the seriousness of the offense committed and would thus be incompatible with the welfare of society" or "Additional institutional treatment is required to enhance your capacity to lead a law abiding life."), sometimes clarified by additional comments pertaining to the status of the individual inmate.

In addition, the Board has developed a system of statistical analysis, called the salient factor score, which purportedly aids the agency in predicting the probability for success of any inmate to be released on parole; the salient factor score is also provided to the inmate with the statement of reasons for the parole denial.

2. The documents supplied had deletions of the material identifying the inmate involved.

3. See 28 C.F.R. § 16.2.

legislative, function of the agency, and often involves an accusatory or disciplinary element in which individual rights and behavior are put in issue. See H.R. Report No.1980, 79th Cong., 2d Sess. 17 (1946), U.S.Code Cong.Serv. p. 1195; S.Rep.No. 752, 79th Cong., 1st Sess., appendix B (1945). See also American Express Company v. United States, 472 F.2d 1050, 60 CCPA 86 (1973); Willapoint Oysters v. Ewing, 174 F.2d 676 (9th Cir. 1949), cert. denied, 338 U.S. 860, 70 S.Ct. 101, 94 L.Ed. 527. With this limited assistance the only course open to the Court is to take a practical approach to the question whether the Board adjudicates when it considers applications for parole.

The Board's own regulations provide for a parole application hearing before a panel of two examiners. 28 C.F.R. § 2.-13. The inmate receives written notice of the hearing and may be represented by a person of his choice; interested parties who oppose the granting of parole may similarly appoint a representative to offer a statement of position. Upon consideration of the statements of the representatives and an interview with the applicant, the examiners render a decision which is communicated in writing to the prisoner. The logical description of such proceeding, wherein a decision is rendered upon consideration of opposing factual claims in the context of defined standards, is an adjudication. The previously-cited portion of the legislative history of the APA fully supports this conclusion.

Defendants take a contrary position based on the en banc decision of the Circuit Court of Appeals in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225 (1963), cert. denied, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315. In that case parolees had sought to apply certain adjudicatory procedures to parole revocation proceedings. The APA did not require an agency to follow the requested procedures (e. g., notice) unless another statute provided for an adjudication *after a hearing.* 5 U.S.C. § 1004 (now 5 U.S.C. § 554). Having found that there was neither a statutory nor constitutional right to a parole revocation hearing,[4] the court concluded that the revocation of parole was not an adjudication which necessitated the invocation of procedures in section 1004.

The court in *Hyser* clearly was called upon to interpret a statute which was materially different from the one now at issue. Section 552(a)(2) of the FOIA requires disclosure of all opinions and orders arising from agency adjudications, without any limitation that it apply only to adjudications pursuant to a formal hearing. This provision is consistent with the overall policy of the APA, which contemplates that adjudications may be conducted without hearings, unless the latter are specifically mandated by some other statute. See H.R.Rep.No.1980, 79th Cong., 2d Sess. 34 (1946), U.S.Code Cong.Serv. p. 1195. Whereas plaintiffs in *Hyser* could not prevail because they failed to show that the Board had engaged in the specific type of adjudication contemplated by § 1004, plaintiff herein is entitled to judgment if it can show that the parole decision follows from any adjudicatory procedure. Any implication in *Hyser* that the Parole Board never engages in adjudication, as defendants suggest, would be beyond the bounds of *stare decisis.* This interpretation is buttressed by circuit court decisions which have reconsidered the principle enunciated in *Hyser* and have either questioned its continued viability in light of the recent expansion of procedural safeguards in various types of adversary proceedings,[5] Baker v. Sard, 158 U.S.App.D.C. 348, 486 F.2d

---

4. The court also held that the constitutionally mandated procedures followed in criminal trials are not necessarily required in parole revocation proceedings, including the right to an adversary hearing and the appointment of counsel for indigents.

5. See, e. g., Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

415 (1973), or have expressly rejected the notion that a proceeding for consideration of a parole application is not an adjudication. Mower v. Britton, 504 F. 2d 396 (10th Cir. 1974).[6]

■ Concluding that the Board adjudicates in cases involving parole applications, the court finds that the examiners' written decisions denying parole must be deemed agency orders. 5 U.S.C. § 551(6).

## II.

■ Defendants' further attempt to exempt these materials from the requirements of § 552(a)(2) by means of a tortuous reading of that subsection and its legislative history. The last sentence of (a)(2) provides that:

A final order, opinion, statement of policy, interpretation, or staff manual or instruction that affects a member of the public may be relied on, used, or cited as precedent by any agency against a party other than an agency only if—

(i) it has been indexed and either made available or published as provided by this paragraph . . .

Defendants contend that this language restricts the applicability of subsection (A) by requiring the publication of only those orders or opinions which have a precedential value. Defendants submit the affidavit of the acting director of the Board, George J. Reed, as proof that the agency's statement of reasons for parole denial are not precedent for subsequent decisions:

parole release decisions are based on analysis of cases in terms of the Board's paroling policy guidelines and the particular merits of the case under consideration. Study of earlier cases has an impact on subsequent decisions through the process of developing and revising the guidelines, but individual case decisions are made without reference to previous specific cases.

Defendants' argument is unconvincing. The fact that an agency may not utilize an order as precedent unless it is published and indexed does not compel the conclusion that only orders having precedential potential are subject to the requirements of subsection (a)(2)(A). The wording of this latter provision is too straightforward and unambiguous to be diluted by defendants' proposed construction. Nor is resort to the legislative history necessary when the statutory language is clear and unequivocal. Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917).[7] A recent attempt to raise the same argument that only agency orders used as precedent need be published was rejected by Judge Robinson of this Court in Tax Analysts and Advocates v. I. R. S., 362 F.Supp. 1298 (D.D.C.1973), aff'd 505 F.2d 350 (D.C.Cir. 1974).[8] The court fully concurs in the analysis of the statute and legislative history presented in that case.

6. See also King v. United States, 492 F.2d 1337 (7th Cir. 1974).

7. Even if the court were to agree that resort to the legislative history is appropriate in this case, it cannot accept defendants' interpretation of the congressional reports. The Senate Report, which is preferable to the House Report in matters of interpretation, Getman v. N. L. R. B., 146 U.S.App.D.C. 209, 450 F.2d 670 (1971), advises that a primary concern when writing subsection (a)(2) was that citizens should not be subjected to situations in which they may lose a controversy with an agency "because of some obscure and hidden order or opinion which the agency knows about but which has been unavailable to the citizen . . ."

S.Rep.No.813, 89th Cong., 1st Sess. 7 (1965). This language should not be distorted to require that only orders or opinions having a specific precedential impact are to be available to the public. The House Report does state that an "advisory interpretation" of an agency need not be open to the public unless it is used as precedent in the disposition of cases. H.R. Rep.No.1497, 89th Cong., 2d Sess. 7 (1966), U.S.Code Cong. & Admin.News, p. 2418. The simple distinction is that the decisions denying parole are not merely advisory interpretations, but are orders arising out of adjudication.

8. Cf. American Mail Line, Ltd. v. Gulick, 133 U.S.App.D.C. 382, 411 F.2d 696 (1969).

Defendants further fail in their contention that the statement of reasons denying parole have no precedential effect. Although a specific decision is not cited as precedent for a subsequent denial of parole, the decisions are apparently compiled and studied in order to develop coherent policy guidelines. These guidelines appear to provide the foundation from which the individual decisions derive their consistency. In this light the statements of reasons do have an indirect precedential impact on subsequent proceedings.

### III.

 Defendants' final argument, that exemption (b)(6) of the FOIA precludes the granting of relief to plaintiff, is unavailing. This provision states that:

(b) This section does not apply to matters that are—

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

Plaintiff, however, does not seek any information which would be a clearly unwarranted invasion of privacy. Plaintiff proposes that identifying materials, including inmates names, be deleted from the public file when that is necessary to protect individual privacy. This resolution of potential conflict with exemption (b)(6) was contemplated by Congress in its enactment of the following condition in subsection (a)(2):

To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion. . . . However, in each case the justification for the deletion shall be explained fully in writing.

The only argument presented by defendants to justify avoidance of this procedure is that the excision of all identifying portions of these materials would render the decisions "meaningless." If the general statements of reasons and accompanying salient factor scores are viewed apart from the confidential, personal files of the inmates concerned, then, it is argued, they will be of no value to a disinterested observer (i. e., someone other than the inmate-applicant). However, if the Freedom of Information Act is to be effective it must allow the public to determine for itself, unfettered from the bureaucratic restraints of self-interested officials, the meaning and value of agency actions embodied in public records.

Having decided that the materials at issue here are agency orders made in the adjudication of cases, they must be made available for public inspection and copying, with appropriate deletions of identifying material which will prevent clearly unwarranted invasions of privacy. Plaintiff's motion for summary judgment is hereby granted and defendants' motions to dismiss and for summary judgment are denied.