581 F.2d 177
 4 Media L. Rep. 1415
 STATE OF NORTH DAKOTA ex rel. Allen I. OLSON, Attorney
General, Appellant,
v.
Cecil D. ANDRUS, Secretary of the Interior, United States
Department of the Interior, James T. McIntyre,
Jr., and Office of Management and
Budget, Appellees.
 No. 78-1075.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 15, 1978.
Decided Aug. 9, 1978.
 
 James S. Hill, Asst. U. S. Atty., Fargo, N. D., on appendix, for appellant.
 Frederick L. Miller, Jr., Sp. Asst. Atty. Gen., Washington, D. C. (argued), Allen I. Olson, Atty. Gen., and Gary S. Helgeson, Asst. Atty. Gen., Bismarck, N. D., on brief, for appellant.
 Mark J. Kurzmann, U. S. Dept. of Justice, Civil Div., Info. & Privacy Sec., Washington, D. C., Leonard Schaitman, Washington, D. C., James R. Britton, U. S. Atty., Fargo, N. D., and Barbara Allen Babcock, Asst. Atty. Gen., Washington, D. C., on brief, for appellees.
 Before LAY, HEANEY and ROSS, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 The State of North Dakota appeals from the District Court's denial of its request under the Freedom of Information Act (FOIA or the Act) to inspect various government documents. We reverse.
 
 
 2
 North Dakota requested access to several government documents prepared in connection with the Administration's policy concerning water projects, particularly, the Garrison Diversion Project in North Dakota.[1] Its request was denied by the respective agencies. These same documents had been the subject of a discovery request in an action filed against the government in the District Court for the District of Columbia by the National Audubon Society (Audubon). National Audubon Society, Inc. v. Andrus, No. 76-0943 (D.D.C., filed May 27, 1976).[2] While Audubon's discovery motion was pending, the government's attorney voluntarily disclosed these documents to Audubon's counsel.
 
 
 3
 The principal issue on appeal is whether the government, by disclosing the documents in the Audubon litigation, waived its right to assert in this action that the documents are exempt from disclosure under 5 U.S.C. § 552(b)(5) (exemption 5).[3] The District Court without discussing the waiver issue held that the documents were privileged and exempt from disclosure under exemption 5. The Court denied North Dakota's request and granted the government's motion for summary judgment.[4] We hold that by voluntarily surrendering the documents in the Audubon litigation, the government waived its right to assert that the documents are exempt from disclosure in this action.[5]
 
 
 4
 The FOIA, promulgated in 1966, was intended generally to increase public access to government records. See Note, The Freedom of Information Act and the Exemption for Intra-Agency Memoranda, 86 Harv.L.Rev. 1047, 1047-1048 (1973) (hereinafter Note). As the Act's legislative history makes clear, such access was intended to be very broad. See generally H.R.Rep.No.1497, 89th Cong., 2d Sess. Reprinted in (1966) U.S.Code Cong. & Admin.News, p. 2418; S.Rep.No.813, 89th Cong., 1st Sess. (1965); Katz, The Games Bureaucrats Play: Hide and Seek Under the Freedom of Information Act, 48 Tex.L.Rev. 1261, 1261-1262 (1970) (hereinafter Katz). Congress considered the Act necessary to cure the inadequacies thought to exist under the Act's predecessor, section 3 of the Administrative Procedure Act, 5 U.S.C. § 1002 (1964 ed.), and to provide a vehicle through which the public could gain access to official information that Congress thought had unnecessarily been withheld. See FAA Administrator v. Robertson, 422 U.S. 255, 262, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975); Brockway v. Department of Air Force, 518 F.2d 1184, 1186 (8th Cir. 1975).
 
 
 5
 The Act requires government agencies to make their records "promptly available to any person," 5 U.S.C. § 552(a)(3), and those requesting information need not particularize any special need. Brockway v. Department of Air Force, supra at 1186. Congress recognized, however, that while the Act favored a broad disclosure policy, it was necessary in certain narrowly defined areas to preserve governmental privacy. S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965). Thus, the Act enumerates nine categories of exemptions through which certain government files are protected from public disclosure. The government must bear the burden of proving that the requested information falls within one of the Act's nine exemptions. 5 U.S.C. § 552(a)(4)(B); EPA v. Mink, 410 U.S. 73, 79, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). The Act's policy in favor of disclosure mandates that the exemptions be construed narrowly. Freuhauf Corporation v. Internal Revenue Service, 522 F.2d 284, 288 (6th Cir. 1975), Vacated on other grounds, 429 U.S. 1085, 97 S.Ct. 1090, 51 L.Ed.2d 530 (1977), Citing Soucie v. David, 145 U.S.App.D.C. 144, 157, 448 F.2d 1067, 1080 (1971).
 
 
 6
 Exemption 5, upon which the government relies in this case, has presented courts and commentators with great difficulty. See generally Note, Supra at 1047. The provision exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).
 
 
 7
 It is generally agreed that two basic policy considerations govern the scope of exemption 5: "(1) preventing premature disclosure of agency records that might impede the proper functioning of the administrative process" and "(2) eliminating the inhibition of a free and frank exchange of opinions and recommendations among government personnel which could result from routine disclosure of internal communications." Note, Supra at 1049; See American Mail Line, Ltd. v. Gulick, 133 U.S.App.D.C. 382, 388-389, 411 F.2d 696, 702-703 (1969); S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); Katz, Supra at 1272.
 
 
 8
 As the Supreme Court has noted, exemption 5's language suggests that the public is entitled to all memoranda or letters that a private party could obtain, through civil discovery, in litigation with the agency. See EPA v. Mink, supra, 410 U.S. at 86, 93 S.Ct. 827. Because the rules of discovery are uncertain in the context of government litigation, however, the Court has indicated that the discovery rules can only be applied in determining the application of exemption 5 "by way of rough analogies."[6] Id.; see Mead Data Cent., Inc. v. U. S. Dept. of Air Force, 184 U.S.App.D.C. 350, 360, 566 F.2d 242, 252 (1977).
 
 
 9
 In our view, the District Court correctly decided that the documents in question on their face were inter-agency or intra-agency communications protected by exemption 5. The documents were "internal communications consisting of advice, recommendations, opinions, and other materials reflecting deliberative or policy making processes," rather than "purely factual or investigative reports." See Brockway v. Department of Air Force, supra at 1190, Citing Soucie v. David, supra, 145 U.S.App.D.C. at 154, 448 F.2d at 1077. We turn to North Dakota's contention that the government is precluded from asserting the exemption in this action.
 
 
 10
 As indicated above, in the course of separate litigation, the government voluntarily permitted counsel for the National Audubon Society to view the documents requested by North Dakota in this action. The government argues that its limited prior disclosure in the Audubon litigation did not amount to a waiver because: (1) Audubon's counsel specifically agreed to maintain the confidentiality of the documents and (2) the government expressly reserved its right to assert at a later time that the documents were privileged. We reject these contentions. While we prefer not to speculate whether or not Audubon's counsel has or will breach his pledge of confidentiality to the government, we note that he cannot eliminate what he already knows in advising his client, whose interests, the government finally conceded at oral argument, are adverse to if not inconsistent with those of North Dakota. Moreover, we question whether, in the course of disclosing these documents to a private party, the government can bind the public and, thereby, foreclose citizens from exercising their rights under the Act merely by executing an agreement in which it reserves its right to assert at a later time that the documents are privileged.[7]
 
 
 11
 In Mead Data Cent., Inc. v. U. S. Dept. of Air Force, supra, Mead Data sought, under the FOIA, documents reflecting the Air Force's computerized legal research system. Citing exemption 5, the District Court held some of the documents exempt under the attorney-client privilege and others exempt as intra-agency memorandums. The D.C. Circuit reversed. The Court rejected the government's reliance on the attorney-client privilege because the documents in question had been shown to West Publishing Company, a third party, with whom the Air Force had been negotiating. In order to claim that the documents are exempt:
 
 
 12
 It must * * * be demonstrated that the information is confidential. If the information has been or is later shared with third parties, the privilege does not apply.
 
 
 13
 Id. 184 U.S.App.D.C. at 361, 566 F.2d at 253 (footnotes omitted).
 
 
 14
 The Court also dismissed the government's contention that the documents were exempt from disclosure as protected intra-agency communications. The Court noted, as the government had conceded, that the documents contained negotiations between the Air Force and West Publishing Company. The Court then discussed the applicability of exemption 5:
 
 
 15
 (N)either of the policy objectives which exemption five is designed to serve avoiding premature disclosure of agency decisions and encouraging the free exchange of ideas among administrative personnel is relevant to a claim of secrecy for a proceeding between an agency and an outside party. All of the information * * * has already been fully disclosed to at least one party outside the Department West itself and the Department has no control over further disclosure.
 
 
 16
 Id. 184 U.S.App.D.C. at 365, 566 F.2d at 257-258.
 
 
 17
 Similarly, when the documents in this action were released to Audubon's counsel, the government's assertion that these communications were confidential was rendered substantially less credible.[8]
 
 
 18
 Requiring the agencies in this action to make the same type of disclosure of the requested documents to the State of North Dakota as has been heretofore made to the counsel for the National Audubon Society will not, in our view, impede the proper functioning of the administrative process or inhibit the free and frank exchange of opinions among government personnel. The government has already indicated a diminished expectation of privacy concerning these documents through its prior voluntary disclosure.
 
 
 19
 The selective disclosure exhibited by the government in this action is offensive to the purposes underlying the FOIA and intolerable as a matter of policy. Preferential treatment of persons or interest groups fosters precisely the distrust of government that the FOIA was intended to obviate. The problem is exacerbated in this action because Audubon's interests are antagonistic to the State of North Dakota.
 
 
 20
 For the foregoing reasons, we reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.[9]
 
 
 
 [1]
 North Dakota requested the following documents: (1) a February 14, 1977, memorandum prepared for President Carter by Secretary of the Interior Andrus concerning the Administration's water project review policy; (2) a Council of Environmental Quality (CEQ) report, dated February 2, 1977, prepared for the Director of the Office of Management and Budget (OMB); and (3) an undated issue paper prepared for the President by OMB. The latter two documents were attached to the February 14, 1977, memorandum. After North Dakota filed this action in the District Court, the CEQ document was voluntarily surrendered by the agency. North Dakota accordingly deleted its request for that document from its complaint
 
 
 [2]
 Counsel informed the Court at oral argument that North Dakota had intervened in that action
 
 
 [3]
 5 U.S.C. § 552(b)(5) exempts from disclosure:
 (5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.
 
 
 [4]
 The court also denied North Dakota's request for relief under Fed.R.Civ.P. 60(b)
 
 
 [5]
 Appellant argues alternatively that, at a minimum, the District Court should have examined the documents in camera to determine, Inter alia, whether the documents contained material not exempt from disclosure that was segregable from material otherwise protected under exemption 5. Because of our holding, we need not reach this issue
 
 
 [6]
 North Dakota urges, citing the language of exemption 5, that the exemption is coextensive with the rules of discovery and principles of evidentiary privilege applicable in civil litigation. The government, on the other hand, while conceding such rules are relevant, argues that courts should instead focus upon the policies underlying the exemption (E. g., "protection of the deliberative process"). Because of our holding, we need not in this case narrowly define the precise relationship between exemption 5 and the rules of discovery applicable in civil litigation
 
 
 [7]
 The government argues that its limited disclosure of the documents was made in an attempt to settle the Audubon litigation and that such settlements should be encouraged by the courts. While we generally favor a broad policy encouraging settlements, we fail to see how that policy preserves the government's ability to claim in this action that the documents are protected by exemption 5. If, as the government suggests, disclosure of these documents to North Dakota might inhibit such private settlements, we reject that view
 An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm. It must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA.
 Mead Data Cent., Inc. v. U. S. Dept. of Air Force, 184 U.S.App.D.C. 350, 366, 566 F.2d 242, 258 (1977).
 
 
 [8]
 In light of the FOIA's broad policy in favor of disclosure and the narrow construction given to the Act's exemptions, courts have generally exhibited an intolerant attitude toward administrative secrecy that appeared capricious
 In American Mail Line, Ltd. v. Gulick, 133 U.S.App.D.C. 382, 411 F.2d 696 (1969), the Maritime Subsidy Board, which had ordered the appellant to refund certain subsidies, stated publicly that it had prepared a thirty-one page memorandum in support of its decision. Apparently to save the agency time, only the last five pages were sent to the appellant. The Court, rejecting the government's argument that the balance of the memorandum was exempt under exemption 5, granted the appellant's FOIA request.
 If the (agency) did not want to expose its staff's memorandum to public scrutiny it should not have stated publicly * * * that its action was based upon * * * (the) memorandum, giving no other reasons or basis for its action. When it chose this course of action "as a matter of convenience" * * * the memorandum lost its intra-agency status and became a public record, one which must be disclosed to appellants.
 Id. 133 U.S.App.D.C. at 389, 411 F.2d at 703. See also Cooper v. IRS, 77-2 U.S. Tax Cases 88,384 (D.D.C. Oct. 26, 1977).
 
 
 [9]
 Safeway Stores Inc. v. FTC, 428 F.Supp. 346 (D.D.C.1977), upon which the government relies, is inapposite. In that case, Safeway sought under the FOIA certain documents in the FTC's possession that were part of a nationwide investigation of the retail food industry. Safeway, opposing the government's assertion that the documents were protected under exemption 5, argued the documents had been compromised because they had been shown to certain congressional committees, at their request, and that certain parts had been "leaked" to the Washington Post. The court rejected both claims and held that neither disclosure to an authorized congressional committee nor the unauthorized publication by a newspaper waives exemption 5. See also Exxon Corporation v. F. T. C., 384 F.Supp. 755 (D.D.C.1974), Remanded, 174 U.S.App.D.C. 77, 527 F.2d 1386 (1976)
 In the present action, the government voluntarily disclosed the documents to a third party. Such disclosure was neither to an "authorized congressional committee" nor the result of an "unauthorized newspaper leak."
 The government also relies upon Halkin v. Helms, --- U.S.App.D.C. ---, --- F.2d ---- (D.C.Cir. 1978). In that case, the plaintiffs, active opponents to the United States' participation in the Vietnam War, requested the government to indicate whether the National Security Agency, the Central Intelligence Agency, and various other agencies had conducted warrantless interceptions of plaintiffs' international wire, telephone, and other communications and had disseminated such information to other federal agencies. The Court upheld the government's claim that the existence of such communications was protected by the "state secrets privilege."
 The Court rejected plaintiffs' argument that because the government had made similar disclosures in a separate, indistinguishable case, it should have been required to disclose the requested documents in this action. The Court stated:
 The precise circumstances of the (other) disclosure * * * however, need not concern us. * * * The government is not estopped from concluding in one case that disclosure is permissible while in another case it is not. * * * (T)he identity of particular individuals whose communications have been acquired can be useful information to a sophisticated intelligence analyst.
 Id., ---, --- F.2d at ----.
 We intimate no view on the propriety of the Court's conclusion in Halkin v. Helms, supra. We note only that the context of that proceeding, involving delicate and sensitive intelligence communications, is distinguishable from the action before this Court. The documents requested by North Dakota do not implicate the "state secrets privilege." Moreover, we emphasize the unfairness that would result if Audubon, a party adverse to North Dakota, were permitted ex parte to view government documents concerning a water project of fundamental importance to the citizens of North Dakota.