**PROVIDENCE JOURNAL CO., Plaintiff,**

**v.**

**FEDERAL BUREAU OF INVESTIGA-TION et al., Defendants, and Raymond L. S. Patriarca, Intervenor.**

Civ. A. No. 77–0526.

United States District Court,
D. Rhode Island.

Oct. 5, 1978.

See also D.C., 460 F.Supp. 762.

Matthew F. Medeiros of Edwards & Angell, Providence, R. I., for plaintiff.

Vincent M. Garvey, Civ. Div., U. S. Dept. of Justice, Washington, D. C., Everett C. Sammartino, Asst. U. S. Atty., R. I., Providence, R. I., Harris L. Berson, Providence, R. I., Harvey Brower, Lawrence, Mass., for defendants.

## OPINION

### Travel of the Case

PETTINE, Chief Judge.

On May 15, 1978 this Court rendered an opinion in this case disposing of five preliminary questions[1] and concluded that: Mr.

Patriarca "has standing to intervene and assert claims arising under the fourth amendment, 5 U.S.C. §§ 552, 552a, 702, 706 (1976) with jurisdiction conferred by 28 U.S. C.A. § 1331 (1976)"; "the electronic surveillance at issue in this case is not exempt from disclosure pursuant to (FOIA) exemption 3 because the specific prohibitions against disclosure in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 (1976) do not apply retroactively"; "(g)uided by the FOIA standard 'unwarranted invasion of personal privacy', as that clause is given meaning by the developing case law, this Court can strike a balance between the individual interest in privacy and the public's interest in disclosure, which will be reasonable and which will not breach Mr. Patriarca's constitutionally protected privacy interest"; "Mr. Patriarca (had) forfeited and waived whatever fourth amendment right he had to have the government refrain from disclosing the illegally seized conversations and their fruits"; and that "first amendment interests counsel not the withholding of information but its disclosure". The Court deferred resolution of exemptions, §§ 552(b) 4, 6, 7 and ordered the government to either consent to the preparation of a document index or serve a memorandum of law in opposition thereto.

On June 6, 1978 the plaintiff and defendant stipulated, with approval of the Court, that the document index need not be prepared and that all the documents would be submitted to the Court for *in camera* inspection.

■ Pursuant to this stipulation the FBI delivered two cartons containing approximately two thousand documents con-

---

1. 1. Whether the Freedom of Information Act (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a), when read in light of the Fourth Amendment, require an agency to disclose information which was obtained in violation of that Amendment.

2. Whether Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510 *et seq.*) or prior federal legislation would prevent disclosure of transcripts of conversations obtained through illegal means.

3. Whether the foregoing statute or prior such statutes are included within exemption (b)(3) of

the Freedom of Information Act and thus specifically exempt from required disclosure.

4. Whether the public's right to know and the right of the press to publish information of public interest prevails over claims that the information was obtained in violation of the proposed intervenor's rights.

5. Whether Mr. Raymond L. S. Patriarca has a right to intervene in this action and, if so, whether he has standing to raise the above issues.

sisting of over seven thousand pages. Subsequently, the plaintiff and defendants submitted cross motions for summary judgment,[2] arguing, respectively, that exemp-

2. The Government also moved to dismiss the Attorney General, the Director of the FBI and the FBI as improper parties to this suit. One court, when faced with a similar motion, described it as "frivolous" and stated that the propriety of suing the head of an agency and the FBI is well established in FOIA suits. *Hamlin v. Kelley*, C.A. No. 77–0526, slip op. at 4–5 (E.D.Ill. June 2, 1977); *cf. Tarnopol v. FBI*, 442 F.Supp. 5 (D.D.C.1977).

FOIA's jurisdictional provision states that a "district court . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld . . .." 5 U.S.C. § 552(a)(4)(B) (1976). The defendants assert that this language establishes the Department of Justice in this case as the exclusive defendant, because it alone is an "agency" as defined by 5 U.S.C. § 551(1). They assert that a majority of courts has concluded that neither an individual officer, *see, e. g., Ott v. Levi*, 419 F.Supp. 750 (E.D.Mo.1976); *Burke v. Kelley*, C.A. No. 75–336–C3 (D.Kan. Feb. 11, 1976); *Shouse v. Burris*, C.A. No. CV 475–198 (S.D.Ga. Dec. 23, 1975); nor the F.B.I., *see e. g., La. Rouche v. Kelley*, C.A. No. 75–6010 (S.D. N.Y. Feb. 16, 1977); *Nix v. Dept. of Justice*, C.A. No. 75–935 (D.S.C. May 12, 1976), *aff'd as modified on other grounds* 572 F.2d 998 (4th Cir. 1978); *cf. Health Systems Medical Supply, Inc. v. Blue Cross-Blue Shield*, C.A. No. 77–P–0988–NE (N.D.Ala. Nov. 21, 1977) are proper parties because they are not agencies within the grant of jurisdictional authority.

It may be doubted whether the statutory language establishes the Department as the sole and exclusive properly named defendant. Nonetheless, the defendants cogently cite the congressional conference report in which it is stated,

the definition of "agency" in this subsection is intended to broaden applicability of the Freedom of Information Act but it is not intended that the term "agency" be applied to subdivisions, offices or units within an agency.

Conference Report H.Rep. 93–1380, 93d Cong., 2d Sess. (1974), *reprinted in* FOIA and Amendments of 1974 (P.L. 93–502) Source Book: Legislative History, Text and Other Documents (Joint Com. Print.) (1975) (hereinafter cited as 1975 Source Book)

Courts have relied on this legislative history in concluding that the FBI, as a subdivision of the Justice Department, may not be sued because it is not within the definition of "agency". *See*

*Johnson v. Dept. of Justice*, C.A. No. 77–2276 (E.D.La. April 25, 1978); *Nix v. Dept. of Justice, supra.*

The effect of this interpretation of the Act of Oct. 21, 1976, Pub.L. No. 94–574, 90 Stat. 2721, (1976) amending, among others, the Administrative Procedures Act, is unclear. In an attempt to facilitate suits against the Government by eliminating formalities in naming party defendants and certain problems of sovereign immunity, Congress legislated that, "If no special statutory review proceeding is applicable, the action for judicial review may be brought against the United States, the agency by its official title, or the appropriate officer." Act of Oct. 21, 1976. Pub.L. No. 94–574, 90 Stat. 2721, § 1, 5 U.S.C. § 703 (1976). It appears that this provision would be inapplicable to this case because FOIA most probably constitutes a "special statutory review proceeding". Yet the Government's instant motion illustrates certain of the ills against which Congress aimed: wasteful motions, sometimes leading to unjust and capricious results, regarding sovereign immunity and improper party defendants, which do not go to the merits or to the proper scope of judicial review or relief. *See* House Report No. 94–1656, 94th Cong., 2d Sess. (1976), *reprinted in* [(1976)] U.S.Code Cong. & Admin.News at 6121.

This case hardly presents facts which warrant decision with regard to who, besides the Department of Justice, may be sued when FBI files are involved. Some circumstances might exist which would require the naming of a defendant other than the Department of Justice in order to bring about that prompt and complete disclosure of information guaranteed by FOIA. Plaintiffs cite the contempt proceedings following *In re United States*, 565 F.2d 19 (2d Cir. 1977) *cert. denied*, 436 U.S. 962, 98 S.Ct. 3082, 57 L.Ed.2d 1129 (1978), as an example of an eventuality which would require the naming of an individual defendant. In this case, there will of course be no difficulty in obtaining compliance with the Court's eventual order. Moreover, any order directed at the Department of Justice binds the Attorney General and his agents (including the FBI director and his agents), in the same way as an injunction directed at the person of the Attorney General would bind him and his agents. Because the extent of relief to be afforded in this case does not depend on the presence of the other named defendants and because the Department is already named, this case will go forward only

tion 7(C) mandates complete disclosure or complete withholding.[3]

 I undertook to read the documents in light of the arguments for summary judgment, and after a week of reading a number of these documents, I concluded that no useful purpose would be served in continuing this laborious and time consuming task. All those documents I read sounded the same theme with only slight variations as they involved different individuals and locales. There is no reason to believe the rest of the papers would offer anything new. I have, therefore, concluded that the defendant, i. e., the United States Government, if it sees fit to further object to revelation, should carry the burden of specifically identifying the sections of each document to which it objects, setting forth as to each objection the government's factual detailed reasons for doing so in light of the standards set forth in this opinion. Requiring the government to make specific objections is consistent with the statutory

scheme which places the burden "on the agency to sustain its action" in withholding documents. 5 U.S.C. § 552(a)(4)(B).[4] The government must demonstrate a threat to privacy interests "more palpable than mere possibilities", *Dept. of Air Force v. Rose*, 425 U.S. 352, 380 n. 19, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).[5]

## STANDARDS FOR DISCLOSURE

### EXEMPTION 7(C): PRIOR CASE LAW

In order to protect personal privacy, FOIA and the Privacy Act together interpose a neutral magistrate between the Government's mandate to disclose and the individual's interest in his privacy. Even before the Privacy Act created a cause of action by which an individual could invoke judicial scrutiny, FOIA by itself provided, in exemptions 7(C) and 6, for the judicial balancing of privacy claims against the public interest in disclosure. As Senator Cranston noted in floor debate on the 1974 FOIA amendments, "Turning to the courts as a

against the Department of Justice as the named defendant. Upon its compliance with the judgment to be entered in this case, the other defendants shall be dismissed.

**3.** Mr. Patriarca has also asserted as part of his case, that FOIA exemptions 6 and 4 prohibit disclosure; and the Government has belatedly *joined him in claiming exemption 6.*

Mr. Patriarca asserts that disclosure would constitute a clearly unwarranted invasion of privacy under exemption 6, which exempts from disclosure medical, personnel and other files. Because the files in issue here appear to have been clearly obtained as part of a criminal investigation and maintained as part of an investigatory file, we find that exemption 6 is inapplicable. Congress clearly had exemption 7 in mind, and not exemption 6, when it legislated with regard to investigatory files.

Mr. Patriarca claims the logs, in so far as they include financial information, are covered by exemption 4. That exemption is inapplicable to the information involuntarily procured for the investigatory file involved here. The interests which that exemption protects, such as the interest in trade secrets, are not those at stake here.

**4.** Thus it is consistent with the statutory scheme to rely solely on the Government to make specific objections, in fulfilment of its statutory obligation to protect privacy. There is, for this reason, no need to permit Mr. Patriarca (or other persons) the opportunity to

make specific objections to segregable portions of the documents. For while Mr. Patriarca had the right to intervene to make *legal* arguments on his behalf, there is no reason to doubt the capacity of the Department of Justice to make *factual* determinations herein required to apply the standards set forth in this opinion to the documents at issue. Mr. Patriarca's interest will be effectively represented by the Department in this regard.

To hold otherwise would result in a mire of practical and legal problems. There is no requirement in FOIA, even when read in light of the Privacy Act, that notice be given to all persons who might be affected by disclosure so that they might make specific objections. Indeed, to do so would be self-defeating, for requiring notice to each individual would reveal all those involved and thus would invade privacy prior to a court adjudication. Moreover, to permit Mr. Patriarca to review the documents in order to make specific objections would invade the privacy of *still* other persons and breach the security of documents, still confidential prior to the effectuation of a judgment ordering disclosure.

**5.** *See* Cong.Rec. S19806–23 (daily ed. Nov. 21, 1974) (remarks of Sen. Thurmond), *reprinted in* 1975 Source Book at 466 (advocating a standard of "substantial possibility" for invasion of privacy which Congress implicitly rejected in overriding the presidential veto).

disinterested third party to resolve disputes . . . between individuals and the government is in keeping with centuries of American tradition." [6]

The interposing of a neutral magistrate, a model analogous to the requirement of a magistrate found in the fourth amendment's warrant clause, *see United States v. United States District Court*, 407 U.S. 297, 315–18, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972), has been recognized to have wide applicability in the protection of privacy. Thus Justice Powell noted that

> the potential for abuse is particularly acute where, as here, the legislative scheme permits access to this [private banking] information without invocation of the judicial process. In such instances, the important responsibility for balancing societal and individual interests is left to unreviewed executive discretion, rather than the scrutiny of a neutral magistrate.

*California Bankers Ass'n v. Shultz*, 416 U.S. 21, 79, 94 S.Ct. 1494, 1526, 39 L.Ed.2d 812 (1974) (Powell, J., concurring).

While most FOIA exemptions eschew judicial balancing, exemptions 7(C) and 6 require it in order to safeguard privacy. The Supreme Court has affirmed that

> Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act . . . .

*Dept. of Air Force v. Rose*, 425 U.S. at 372, 96 S.Ct. at 1604.

While *Rose* dealt with exemption 6, we shall treat 6 and 7(C) as identical in meaning because of their similarity of purpose and language, except that an unwarranted invasion of personal privacy permits withholding of investigatory files under exemption 7(C), but only a clearly unwarranted invasion of personal privacy permits withholding of personnel, medical and other files under exemption 6.

1) A developing case law has begun to give meaning to these exemptions and to strike an appropriate balance between individual privacy and public disclosure. The case law has defined the "privacy" which FOIA protects largely in terms of the content of information and has tried to demarcate those informational topics which are deeply private from those which are only minimally private.

Cases begin their search for a definition of privacy with the phrases " 'intimate details' of a 'highly personal' nature" [7] and "commonly thought of as private" matters.[8] One court has singled out "information [regarding] marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, reputation . . . ." as involving intimate details;[9] added to these are religious and philosophic beliefs [10] and travel history.[11] Courts have also tried to define privacy by the emotion which disclosure evokes: matters are private which, if disclosed, evoke embarrassment [12] in a person of normal sensibilities.

**6.** Cong.Rec. S19806–23 (daily ed. Nov. 21, 1974) (remarks of Sen. Cranston), *reprinted in* 1975 Source Book at 467.

**7.** *Robles v. E.P.A.*, 484 F.2d 843, 845 (4 Cir. 1973); *Getman v. N.L.R.B.*, 146 U.S.App.D.C. 209, 214, 450 F.2d 670, 675 (1971); *see* H.Rep. No. 1497, 89th Cong., 2d Sess. at 11 (1966), U.S.Code Cong. & Admin.News 1966, p. 2418, *reprinted in* 1975 Source Book at 32; S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965), *reprinted in* 1975 Source Book at 44.

**8.** *Marathon LeTourneau Co., Marine Div. v. N.L.R.B.*, 414 F.Supp. 1074, 1084 (S.D.Miss. 1976).

**9.** *Ditlow v. Shultz*, 170 U.S.App.D.C. 352, 356, 517 F.2d 166, 170 (1975); *Rural Housing Alli-*

*ance v. U. S. Dept. of Agriculture*, 162 U.S.App. D.C. 122, 126, 498 F.2d 73, 77 (1974). *Accord, Marathon LeTourneau Co., Marine Div. v. N.L. R.B.*, 414 F.Supp. at 1084; *Comm. on Masonic Homes v. N.L.R.B.*, 414 F.Supp. 426, 431 (E.D. Penn.1976), *vacated*, 556 F.2d 214 (3d Cir. 1977).

**10.** *Comm. on Masonic Homes v. N.L.R.B.*, 414 F.Supp. at 431 (dicta), *vacated*, 556 F.2d 214.

**11.** *Mylan Pharmaceuticals, Inc. v. N.L.R.B.*, 407 F.Supp. 1124, 1126 (W.D.Penn.1976) (dicta).

**12.** *Rural Housing Alliance v. U. S. Dept. of Agriculture*, 162 U.S.App.D.C. at 126, 498 F.2d at 77; *Comm. on Masonic Homes v. N.L.R.B.*, 414 F.Supp. at 431, *vacated*, 556 F.2d 214; *Met.*

Various cases have protected information about an individual's job performance, such as supervisors' comments or conclusions about the appropriateness of his civil service classification.[13] While corporations have no privacy,[14] personal financial information is protected,[15] including information about small businesses when the individual and corporation are identical.[16] Medical information is not per se protected;[17] thus a court has permitted disclosure of a study indicating that persons in certain locations may have been subjected to unusual amounts of radiation.[18] While past criminal activity[19] and prison[20] records are private, disclosure may be warranted by the public interest.[21] Courts have disagreed as to whether union authorization cards are confidential.[22] Finally, the Supreme Court has said that the legislative history shows that exemption 6 refers in particular to the kind of files maintained by HEW, the Selective Service and the Veterans' Administration; such files contain " 'vast amounts of personal data' [concerning an individual] . . . showing, for example, where he was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examinations, evaluations of his work performances." Dept. of Air Force v. Rose, 425 U.S. at 377, 96 S.Ct. at 1606.

Some courts will engage in a balancing of interests only if they first determine that a substantial invasion of privacy is threatened,[23] while others balance regardless of the seriousness of the threatened invasion.[24] These latter courts have thus had to review the privacy interests involved in the disclosure of only names and addresses[25] and

13. Sears, Roebuck & Co. v. G.S.A., 180 U.S. App.D.C. 202, 553 F.2d 1378 (1977) cert. denied, 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977); Campbell v. U. S. Civil Service Comm., 539 F.2d 58 (10th Cir. 1976); Met. Life Ins. Co. v. Usery, 426 F.Supp. 150; Duncan v. U. S. Civil Service Comm., 426 F.Supp. 41 (E.D.La. 1976); Vaughn v. Rosen, 383 F.2d 1049 (D.D.C.1974), aff'd on other grounds, 173 U.S. App.D.C. 187, 523 F.2d 1136 (1975); Washington Research Project, Inc. v. H.E.W., 366 F.Supp. 929, 937 (D.D.C.1973), aff'd in part and rev'd on part on other grounds, 164 U.S.App. D.C. 169, 504 F.2d 238 (1974), cert. denied, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975). But see Aug v. Nat'l R. R. Passenger Corp., 425 F.Supp. 946 (D.D.C.1976) (disclosing salary and personnel data). Cf. Information Acquisition Corp. v. Dept. of Justice, 444 F.Supp. 458 (D.D. C.1978); Westinghouse Elec. Corp. v. Brown, 443 F.Supp. 1225, 1233 (E.D.Va.1977).

14. Robertson v. Dept. of Defense, 402 F.Supp. 1342, 1348–49 (D.D.C.1975); K. Davis, Administrative Law Treatise § 3A.22 at 163–64 (Supp. 1970). But see Wellford v. Hardin, 444 F.2d 21, 24 (4th Cir. 1971).

15. Deering Milliken, Inc. v. Irving, 548 F.2d 1131 (4th Cir. 1977); Luzaich v. United States, 435 F.Supp. 31 (D.Minn.1977); Sonderegger v. Dept. of Interior, 424 F.Supp. 847, 852–56 (D.Idaho 1976).

16. National Parks and Conservation Assoc. v. Kleppe, 178 U.S.App.D.C. 376, 390–91, 547 F.2d 673, 687–88 (1976).

17. Cf. Ackerley v. Ley, 137 U.S.App.D.C. 133, 420 F.2d 1336 (1969).

18. Robles v. E.P.A., 484 F.2d 843 (4 Cir. 1973).

19. Cong. News. Syndicate v. U. S. Dept. of Justice, 438 F.Supp. 538, 544–45 (D.D.C.1977); Tennessean Newspaper, Inc. v. Levi, 403 F.Supp. 1318 (M.D.Tenn.1975).

20. National Prison Project of A.C.L.U. Foundation, Inc. v. Sigler, 390 F.Supp. 789 (D.D.C. 1975).

21. Columbia Packing Co., Inc. v. U. S. Dept. of Agriculture, 563 F.2d 495 (1st Cir. 1977); Christy v. United States, 68 F.R.D. 375 (N.D. Tex.1975) (disclosing prior record of inmate).

22. See Comm. on Masonic Homes v. N.L.R.B., 556 F.2d 214, 218–20 & n. 5 (3d Cir. 1977).

23. Rural Housing Alliance v. U. S. Dept. of Agriculture, 162 U.S.App.D.C. at 126, 498 F.2d at 77; Tennessean Newspaper, Inc. v. Levi, 403 F.Supp. at 1320–21; see Wine Hobby U.S.A., Inc. v. I.R.S., 502 F.2d 133, 136 (3d Cir. 1974).

24. Ditlow v. Shultz, 170 U.S.App.D.C. at 356, 517 F.2d at 170; Getman v. N.L.R.B., 146 U.S. App.D.C. 214, 450 F.2d at 675.

25. Getman v. N.L.R.B., 146 U.S.App.D.C. 214, 450 F.2d at 675; Disabled Officers Assoc. v. Rumsfeld, 428 F.Supp. 454 (D.D.C.1977); Mylan Pharmaceuticals v. N.L.R.B., 407 F.Supp. at 1126.

marital status.[26] This has thrust upon them a more relative and contextual definition of privacy and less of a content-based definition. For example, a disclosure of only a name, ordinarily not private, in the context of Watergate would be quite embarrassing.[27] These latter courts have also come to recognize that privacy includes an interest in being free from intrusions, solicitations, mailings and harassments.[28] For example, courts have had to consider the degree to which a mere disclosure of a name would subject recipients to disagreeable harassment[29] or beneficial solicitations.[30]

While such courts have begun to treat privacy as a broader concept than a pure content-based definition allows, courts have only incidentally suggested that the manner in which the government obtains information determines whether it is private. No court has withheld disclosure solely on the ground that the manner in which the information was obtained forbids release. Thus, courts have disclosed information obtained on the basis of a promise of confidentiality: "While, perhaps, a promise of confidentiality is a factor to be considered, it is not enough to defeat the right of disclosure . . . ."[31] Moreover, only an explicit, not inferable, assurance of confidentiality may be recognized.[32] Other courts remain unsure whether it is a factor at all.[33] One court rejected the idea that "the right to privacy includes the right to select people to whom one will communicate his ideas".[34]

■ 2) A court, having determined that a privacy interest is at stake, must then balance it against the public interest in disclosure. Congress has already calibrated the scales strongly in favor of disclosure with respect to exemption 6 by permitting withholding only for a "clearly unwarranted invasion", and less strongly in favor of disclosure under exemption 7(C) which permits withholding to prevent an "unwarranted invasion" of personal privacy. The Supreme Court stated that the test in 7(C) is in "marked contrast" to the higher test in 6 for withholding. It noted that the Conference Committee had deleted "clearly" from

26. *Met. Life Ins. Co. v. Usery*, 426 F.Supp. at 168 n. 85; *see Wine Hobby U.S.A., Inc. v. I.R.S.*, 502 F.2d at 137.

27. *Cong. News Syndicate v. U. S. Dept. of Justice*, 438 F.Supp. at 543 ("the context in which the information appears is determinative").

28. *See Ditlow v. Shultz*, 170 U.S.App.D.C. 352, 517 F.2d 166 (request for names of international travelers to notify them of class action).

29. *Wine Hobby U.S.A., Inc. v. I.R.S.*, 502 F.2d 33 (denying disclosure of names and addresses to business for commercial solicitation); *Sonderegger v. U. S. Dept. of Interior*, 424 F.Supp. 847 (D.Idaho 1976) (refusing to disclose to newspapers victims' claims for disaster relief to prevent harassment by "fast-buck artist"); *cf. Ditlow v. Shultz*, 170 U.S.App.D.C. 352, 517 F.2d 166 (one-time mail notice of class action).

30. *Disabled Officers Assoc. v. Rumsfeld*, 428 F.Supp. 454 (non-profit lobby for ex-officers given names of officers for a one-time membership solicitation by mail); *cf. Getman v. N.L.R.B.*, 146 U.S.App.D.C. 209, 450 F.2d 670 (names disclosed to scholar for one time solicitation for an interview).

31. *Robles v. E.P.A.*, 484 F.2d at 846; *see Ackerley v. Ley*, 137 U.S.App.D.C. at 136–37 n. 3, 420 F.2d at 1339–40 n. 3; *Legal Aid Society of*

*Alameda County v. Shultz*, 349 F.Supp. 771, 776 (C.D.Cal.1972); K. Davis, Administrative Law Treatise § 3A.22 at 164 (Supp.1970).

32. *Poss v. N.L.R.B.*, 565 F.2d 654, 658 (10th Cir. 1977); *Philadelphia Newspapers, Inc. v. U. S. Dept. of Justice*, 405 F.Supp. 8, 12 (E.D.Pa. 1975).

33. *Westinghouse Electric Corp. v. Schlesinger*, 542 F.2d 1190, 1196 n. 5 (4th Cir. 1976); *Ditlow v. Shultz*, 170 U.S.App.D.C. at 358, 517 F.2d at 172; *Petkas v. Staats*, 163 U.S.App.D.C. 327, 329–30, 501 F.2d 887, 889–90 (1974); *Sonderegger v. U. S. Dept. of Interior*, 424 F.Supp. at 853; *Comm. on Masonic Homes v. N.L.R.B.*, 414 F.Supp. at 432, *vacated*, 556 F.2d 214; *cf. Charles River Park "A", Inc. v. H.U.D.*, 171 U.S.App.D.C. 286, 294 519 F.2d 935, 943 (1975); *Met. Life Ins. Co. v. Usery*, 426 F.Supp. at 172 n. 95.

34. *Marathon LeTourneau Co., Marine Div. v. N.L.R.B.*, 414 F.Supp. at 1084; *see Cong. News. Syndicate v. U. S. Dept. of Justice*, 438 F.Supp. at 541; *Mylan Pharmaceuticals, Inc. v. N.L.R.B.*, 407 F.Supp. at 1126; *Title Guarantee Co. v. N.L.R.B.*, 407 F.Supp. 498, 505 (S.D.N.Y. 1975) *rev'd on other grounds*, 534 F.2d 484, (2d Cir.) *cert. denied*, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976).

the "unwarranted invasion" test of 7(C) in response to President Ford's objection. *Dept. of Air Force v. Rose,* 425 U.S. at 378–79 n. 16, 96 S.Ct. 1592.

The Supreme Court, in *Dept. of Air Force v. Rose,* made clear that it takes this calibration seriously and that courts are not to approve blanket exemptions for private matters, but rather are to balance interests carefully, giving great deference to the public's interest in disclosure. Thus in *Rose,* the Court compelled the disclosure, to student law review editors, of case summaries of honor and ethics hearings for honor code violators at the Air Force Academy. While it required personal identifying characteristics to be deleted, it ordered disclosure over the objections of dissents which stressed the possibility of identification, the life-long shame that accompanies such violations and the minimal public interest in the individual histories. Its refusal to interpret exemption 6 as giving a blanket exemption for personnel and medical files and its mandate in favor of disclosure shows that the Court intends that only serious and unwarranted intrusions on privacy may prevent disclosure.

■ The interest to be counterbalanced against the privacy right is the generalized interest of the public in disclosure, and not the individualized interest of the FOIA plaintiff and his particular reason for seeking the information. It is the rule of the First Circuit that the plaintiff stands in the stead of the public.[35] Thus, disclosure will not be mandated if only a private commercial interest supports it.

■ The public interest which has received the greatest protection is the interest in honest and efficient government. One court has described this as the core FOIA interest. Wherever official wrongdoing is

in issue, the courts are quick to compel disclosure. In *Columbia Packing Co., Inc. v. U. S. Dept. of Agriculture,* 563 F.2d 495 (1st Cir. 1977), the First Circuit affirmed an order compelling disclosure of the employment and personnel files, including staff evaluations, of former meat and poultry inspectors who had been convicted of receiving bribes. The request was made by a meat-packing company threatened with a loss of federal inspection services (which would result in its closing) because its president had been convicted of bribing the two officials. Ignoring the private commercial purpose of the meat-packing firm, the court nonetheless justified this clear invasion of privacy because

'the public has an interest in whether public servants carry out their duties in an efficient and law-abiding manner' and therefore, in these circumstances, has a legitimate curiosity as to the two meat inspectors' careers. . . . [T]he scandal . . . was far-reaching and of great notoriety. To forestall similar occurrences, the public has an interest in discerning how the officials conducted themselves prior to their discharge for bribery, how well they were supervised, and whether U.S.D.A. or any of its other personnel were chargeable with any degree of culpability for their crimes. In particular, the public has an interest in knowing whether companies like Columbia were the victims of official extortion or whether the corrupt inspectors were enticed into their misconduct by the companies. *Id.* at 499.

The First Circuit suggested that where government wrongdoing is in issue there is a special interest in complete, not partial, disclosure because of the "beneficial effect upon public confidence of knowing that

---

**35.** *Columbia Packing Co., Inc. v. U. S. Dept. of Agriculture,* 563 F.2d at 498–99. *See Ditlow v. Shultz,* 170 U.S.App.D.C. at 357 n. 21, 517 F.2d at 171 n. 21; *Wellford v. Hardin,* 444 F.2d at 25; Davis, The Information Act, a Preliminary Analysis, 34 U.Chi.L.Rev. 761, 783 (1967); *see also Getman v. N. L. R. B.,* 146 U.S.App.D.C. at 215–16 and n. 24, 450 F.2d at 676–77 and n. 24 (privacy interest balanced against plaintiff's

purpose in seeking disclosure); *Disabled Officers Assoc. v. Rumsfeld,* 428 F.Supp. at 457–59 (reviewing particular use to which plaintiff would put the disclosed information); *Rabbitt v. Dept. of Air Force,* 383 F.Supp. 1065, 1070 (S.D.N.Y.1974); *Christy v. United States,* 68 F.R.D. at 378 (reviewing public benefit resulting from plaintiff's private use of information.).

nothing of possible relevance is being suppressed", *id.* at 500 n. 3; complete disclosure avoids "any possible appearance of governmental 'cover-up' ". *Id.* at 501.

At issue in *Philadelphia Newspapers, Inc. v. U. S. Dept. of Justice,* 405 F.Supp. 8 (E.D.Pa.1975), were letters from private persons to the federal parole board supporting and opposing the parole of the chairman of the Philadelphia City Commissioners who had been convicted of mail fraud. Although the letters disclosed a history of personal friendships and involvements in fraternal organizations, the court ordered disclosure, over the parole board's objection, because of the public's right to know the "basis upon which a former high public official was released from custody . . ." *Id.* at 11.

In *Congressional News Syndicate v. United States Dept. of Justice,* 438 F.Supp. 538 (D.D.C.1977), the court reviewed files regarding the Watergate related "Townhouse operation" which collected unreported contributions for Richard Nixon's campaign. Although some contributors were entirely innocent and subject to deep embarrassment, disclosure of all contributors was ordered because the material "entailed what later was determined to be criminal conduct on the part of holders of the public trust". *Id.* at 544. The court noted that the federal reporting law had stripped away the privacy interest of these private persons in their contributions. On the other hand, the court refused to order disclosure of the lengthy criminal record of the landlord of the premises in which the Townhouse operation was located. The court concluded that, even if he were involved with the illegal operation, his past crimes were so unrelated to the present wrongdoing that his privacy interest outweighed the public's interest. The court emphasized that disclosure of his past record coupled with an innuendo of present wrongdoing, in the absence of current criminal charges, would deprive him of a forum to clear his name.

Finally, the disclosure in *Dept. of Air Force v. Rose* related to the non-criminal wrongdoing of cadets in whom the public

had placed its trust. 425 U.S. at 383, 96 S.Ct. 1592 (Burger, C. J., dissenting).

The public interest in disclosure, of course, extends beyond the interest in the honesty of those who occupy the public trust and beyond the normal· workings of the government. For example, it includes personnel information regarding persons paid by public funds. *See Aug v. National Railroad Passenger Corp.,* 425 F.Supp. 946 (D.D.C.1976) (disclosing salary and personnel decisions by Amtrak Board of Directors).

■ The special interest in non-governmental public figures also justifies disclosure of information under FOIA. The doctrine of "public personage", which limits the common law right of privacy, has been applied to FOIA actions as well. In *Tennessean Newspapers Inc. v. Levi,* 403 F.Supp. 1318 (M.D.Tenn.1975), the court required a United States attorney to disclose information concerning arrested persons, including names, addresses, and marital and employment status, because "individuals who are arrested or indicted become persons in whom the public has a legitimate interest . . . . The lives of these individuals are no longer truly private". *Id.* at 1321; *see Congressional News Syndicate v. U.S. Dept. of Justice,* 438 F.Supp. at 544.

■ A different factor to be weighed in the decision to disclose is the likelihood that the plaintiffs will use the information in a way which benefits the public. Thus courts have disclosed information useful to scholars studying governmental policy because they would put the information into a form useful to the public. In *Deering Milliken Inc. v. Irving,* 548 F.2d 1131 (4th Cir. 1977), a court justified disclosure of workers' private financial records to a corporation in a suit for back-pay, because the entire labor controversy, of which this was a small part, had been studied intensively by law professors and was the subject of many law review articles. Similar reasoning justified disclosure of the names of workers, voting in an N.L.R.B. election, to scholars who wished to interview them in a study of election techniques. The court noted the

great need for such empirical studies and stressed that the proposed study was of exceptional academic quality. *Getman v. N. L. R. B.*, 146 U.S.App.D.C. 209, 214–16, 450 F.2d 670, 675–77 (1971).

To the contrary, where a misuse of information may result, courts are wary of ordering disclosure. Thus one court in disclosing union authorization cards first found the danger of their being used in an unfair labor practice to be minimal.[36] Another court refused to order disclosure of the amount of individual claims submitted by survivors of a dam disaster, lest the information cause dissension and ill-feeling in an already fragile community and put the victims at a disadvantage in bargaining with contractors to rebuild their homes.[37]

 Finally, there are two general principles to be considered in mandating disclosure. Where there is no alternative source of information, courts favor disclosure.[38] In addition, a court always should prefer the deletion of identifying material to blanket withholding, in order to maximize the amount of disclosure ordered.[39]

## LEGAL CONCLUSIONS

### The Present Case

 The Court engaged in a partial *in camera* review of the logs in issue and found that none fell within any of the categories which, according to decisional law, should be excluded from public scrutiny. Though I surmise that the remaining logs will be of the same tenor as those I have

36. *Comm. on Masonic Homes v. N. L. R. B.*, 414 F Supp. at 431, *vacated*, 556 F.2d 214.

37. *Sonderegger v. U. S. Dept. of Interior*, 424 F.Supp. at 852–56.

38. *Getman v. N. L. R. B.*, 146 U.S.App.D.C. at 216, 450 F.2d at 677; *Disabled Officers Assoc. v. Rumsfeld*, 428 F.Supp. at 458–59; *Christy v. United States*, 68 F.R.D. at 378.

39. *Dept. of Air Force v. Rose*, 425 U.S. at 374, 381–82, 96 S.Ct. 1592.

40. We may briefly dispose of two specific objections already raised by the Government in its motion for summary judgment. It claims that unintelligible portions of the files ought

read,[40] I will, nevertheless, set forth three categories and the law pertaining to each which will be used as a guide in ruling on any objections that might be made by the government:

1) Matters relating to Mr. Patriarca's private life, and the private lives of his family members who are still living, *i. e.* his health, as well as that of his family, personal and religious beliefs and the like.

2) Dealings with public officials and public figures in matters which may be legal and/or illegal.

3) The names and code names or numbers of FBI agents and informants.

### Matters Relating to Mr. Patriarca's Private Life

 The first type of information, matters relating to family relationships and personal friendships, is private. The conversations no doubt also express each speaker's character in repose, relaxation and spontaneity. These aspects of character are also private: to whom a person wishes to show himself is within his own control.

The only interest the public has in such information, as far as this Court can foresee, derives from its curiosity about a man of such notoriety as Mr. Patriarca. The only purpose of disclosure would be to satisfy an idle curiosity. Mr. Patriarca is not such a public figure as to warrant the conclusion that every aspect of his life is fit for public consumption. Even a President, as to whom the public has the most compel-

not be disclosed because no public interest could thereby be served. This must fail because the Government has the burden of showing that disclosure ought not to occur, *supra* at 783, but it cannot show that any privacy interest or any exemption is implicated by unintelligible portions of the logs. *See National Prison Project of the ACLU v. Sigler*, 390 F.Supp. 789, 794 (D.D.C.1975). The Government also claims that portions in which a person is identified by first name only ought to be withheld lest curiosity about his actual identity lead to harmful speculaticn. This too must fail because no particularized and imminent threat to an individual's privacy has been shown which would satisfy the Government's burden.

ling, near total interest, has private realms which may not be disclosed.[41]

### Dealings with Public Figures

■ The Court strikes a different balance with regard to information concerning Mr. Patriarca's possible dealings with prominent persons, public officials and persons involved with organized crime. Favoring disclosure is the general Congressional mandate in FOIA to disclose. Moreover, the Congressional conferees for the 1974 FOIA amendments specifically approved the policy of the Justice Department regarding disclosure of investigatory records of historic interest and over 15 years old. In this case, the first year of surveillance is more than 15 years past.

Also favoring disclosure is the plaintiff's intention to further develop the information through investigative reporting and to give its findings broad dissemination to the public. The House Report on the 1974 amendments specifically noted "the relative lack of utilization of the act by the news media".[42] Here a newspaper has tried to use FOIA, and disclosure to it would protect one of the basic purposes of the statute, to further the public's first amendment right to know. At stake is the opportunity for a newspaper to inform the citizens of Rhode Island about the alleged widespread corruption of public officials by organized crime and the response of state and federal law enforcement officials to this corruption. *See Columbia Packing Co., Inc. v. U. S. Dept. of Agriculture, supra.* In fact, during the administrative appeal regarding this FOIA request, Deputy Attorney General Flaherty, in his letter of October 2, 1977 to plaintiff's counsel, described the "public interest in the release of these materials" as "substantial". Finally, no other source is available for this information.

Also favoring disclosure are the diminished privacy interests of Mr. Patriarca and the public officials and public persons with whom he allegedly associated. Public officials[43] have made a willing choice to enter the public fray and are held to have accepted the consequences. The same is true of the public figure who voluntarily[44] or involuntarily[45] enters the public arena. Thus the public figure, including the businessman[46] who voluntarily assumes the helm of

---

**41.** *Nixon v. Administrator of General Services,* 433 U.S. 425, 455–65, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977); *cf. Time, Inc. v. Firestone,* 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) (prominent divorcee not a public figure).

**42.** *See* H.R.Rep. No. 92–1419, 92d Cong., 2d Sess., *reprinted in* 1975 Source Book at 15.

**43.** *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) (defamation); *Garrison v. Louisiana,* 379 U.S. 64, 77, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964) (defamation); *Rosenblatt v. Baer,* 383 U.S. 75, 85, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966) (defamation) (candidate for office); *Nixon v. Administrator of General Services,* 433 U.S. at 457–65, 97 S.Ct. 2777 (diminished privacy interest of former public official).

**44.** *Cf. Curtis Publishing Co. v. Butts,* 388 U.S. 130, 162–68, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (Warren, C. J., concurring); *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 345, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (defamation) (public figures who have "voluntarily injected themselves into a public controversy"); *Time, Inc. v. Firestone,* 424 U.S. 448, 484–89, 96 S.Ct. 958, 47 L.Ed.2d 154 (Marshall, J., dissenting); *Ryder v. Time, Inc.,* 181 U.S.App.D.C. 201, 203, 557

F.2d 824, 826 (1976); *Sidis v. F–R Pub. Corp.,* 113 F.2d 806 (2d Cir.), *cert. denied,* 311 U.S. 711, 61 S.Ct. 393, 85 L.Ed. 462 (1940); *Fram v. Yellow Cab Co.,* 380 F.Supp. 1314, 1333–34 (W.D.Pa.1974); *Hoffman v. Washington Post Co.,* 433 F.Supp. 600, 604 (D.D.C.1977). *But cf. Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 573–78, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977) ("right of publicity").

**45.** *Cf. Cantrell v. Forest City Pub. Co.,* 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974) (false light privacy); *Meeropol v. Nizer,* 381 F.Supp. 29, 32–35 (S.D.N.Y.1974) *aff'd* 560 F.2d 1061 (2d Cir. 1977) (children of public figures). *But cf. Time, Inc. v. Firestone,* 424 U.S. at 452–54, 96 S.Ct. 958 (necessary resort to divorce courts does not make one a public figure).

**46.** *Cepeda v. Cowles Mag. and Broadcasting, Inc.,* 392 F.2d 417 (9th Cir.) *cert. denied,* 393 U.S. 840, 89 S.Ct. 117, 21 L.Ed.2d 110 (1968); *Trans World Accounts, Inc. v. Assoc. Press,* 425 F.Supp. 814, 818–21 (N.D.Cal.1977) (corporation); *Martin Marietta Corp. v. Evening Star Newspaper,* 417 F.Supp. 947, 954–57 (D.D.C. 1976) (defamation) (defense contractor). *But cf. Lawlor v. Gallagher Presidents' Report, Inc.,* 394 F.Supp. 721, 731 (S.D.N.Y.1975) (executive

an important enterprise, gives up some of his interests in privacy.

 Moreover, it has been held that involvement with crime makes one a public figure with regard to the criminal activity.[47] Even personal information, as it relates to criminal acts, is of public interest. The criminal has voluntarily assumed the status of a public figure; even the victim,[48] though unwilling, loses some of his right to privacy. Also, involvement with known criminals[49] may diminish one's privacy right, as does association with public officials.[50] The same is true of those entwined in matters of public consequence.[51] Thus, with regard to legal and allegedly illegal acts, public officials and public figures have less than a substantial interest in privacy.[52] Mr. Patriarca is such a public figure. For decades he has been a figure of great notoriety, public speculation and the object of criminal prosecutions. The activities portrayed in the logs which I have read may be interpreted as revealing a conspiratorial hierarchy of crime: such activity is a legitimate subject of public interest and should be disclosed. The public certainly has an interest in knowing the full extent of any illegal operation, with all its levels of authority. No matter how low one is in a hierarchical structure and no matter how unknown his name may be, he is, nevertheless, an integral part of the entire scheme, and thus has made himself a figure of great public interest. There may be a case of individual, isolated wrongdoing where it may be argued FOIA does not mandate the revelation of such act because the public interest in disclosure does not outweigh the individual's interest that his government not brand him as guilty without the proper invocation of the criminal process. However, this is not the situation here, where each individual is an integral part of the entire scheme. The public interest supports disclosure, and we must keep in mind that the Providence Journal is especially suited to serve this public interest.

With respect to public officials, since they have deliberately exposed their conduct to public scrutiny and hold the public trust, and because their dealings with Mr. Patriarca are *per se* of public interest, all their dealings with Mr. Patriarca, both legitimate and illegitimate, will be subject to disclosure.

of large corporation not public figure for defamation suit), *remanded*, 538 F.2d 311 (2d Cir. 1976).

**47.** *Cf. Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971) (defamation); *Ocala Star-Banner Co. v. Damron*, 401 U.S. 295, 91 S.Ct. 628, 28 L.Ed.2d 57 (1971) (same); *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971) (same); *McNally v. Pulitzer Pub. Co.*, 532 F.2d 69, 77–79 (8th Cir. 1976), *cert. denied*, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976) (privacy); *Cardillo v. Doubleday Co.*, 518 F.2d 638 (2d Cir. 1975); *Rosenberg v. Martin*, 478 F.2d 520, 524 (2d Cir. 1973), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973) (privacy); *Bergman v. Stein*, 404 F.Supp. 287, 296–97 (S.D.N.Y.1975) (defamation and privacy); *Travers v. Paton*, 261 F.Supp. 110 (D.Conn.1966); *Mattheis v. Hoyt*, 136 F.Supp. 119 (W.D.Mich. 1955); *Raynor v. American Broadcasting Co.*, 222 F.Supp. 795, 796–97 (E.D.Pa.1963).

**48.** *Cf. Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975) (privacy); *Time, Inc. v. Hill*, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967) (false light privacy).

**49.** *Cf. Rosanova v. Playboy Enterprises, Inc.*, 411 F.Supp. 440, 443–45 (S.D.Ga.1976) (past publicity about repeated contact with underworld figures makes one a public figure).

**50.** *Cf. Rosenbloom v. Metromedia, Inc.*, 403 U.S. at 62, 91 S.Ct. 1811 (White, J., concurring). *But cf. Time, Inc. v. Firestone*, 424 U.S. at 476–77, 96 S.Ct. 958 (Brennan, J., dissenting) (questioning continued validity of Justice White's concurrence in *Rosenbloom*).

**51.** *Cf. Wolston v. Readers Digest Ass'n, Inc.*, 429 F.Supp. 167, 174–78 (D.D.C.1977) ("a virtual nonentity desiring no attention at all may, by engaging in activity that appears to affect the public's well-being, qualify" as a public figure).

**52.** Plaintiff is wrong in arguing that because Rhode Island does not recognize a tort for privacy, *see Gravina v. Brunswick*, 338 F.Supp. 1, 3 (D.R.I.1972), these persons have no privacy interest at all. FOIA protects privacy as a matter of federal law. Although federal courts look to the common law for guidance in defining privacy, the right protected in FOIA proceedings is a federal one.

*Names of F.B.I. Agents and Informants*

The government asserts that the names of FBI agents and informants should be withheld pursuant to 7(C). One court has flatly rejected the proposition that governmental employees, such as FBI agents, have any valid expectation that the fact of their employment is private, except where Congress has explicitly provided otherwise.

> As employees of a public agency, they have no legitimate privacy right to the deletion of their names. Their involvement in investigative activities for the FBI is not a 'private fact'. *Ferguson v. Kelley*, 448 F.Supp. 919, 923 (N.D.Ill. 1977).

That court recognized, however, that agents' names might be withheld under other exemptions, such as (b)(7)(F) and (b)(5).

Other courts have found that agents possess at least a minimal privacy interest in their employment. The Fourth Circuit has said

> One who serves his state or nation as a career public servant is not thereby stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives. While the right of privacy to these FBI agents is perhaps minimal, we find that the public interest in the identification of the FBI agents . . . to be even less. *Nix v. United States*, 572 F.2d 998, 1006 (4th Cir. 1978) (footnote omitted); *accord, Tarnopol v. FBI*, 442 F.Supp. 5, 8 (D.D.C. 1977) (withholding agents' names to prevent possible harassment); *Johnson v. Dept. of Justice*, C.A. No. 77–2276, slip op. at 2–3 (E.D.La. April 25, 1978); *cf. Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977) (relying on (b)(7) to withhold agents' names).

Originally the Department of Justice asserted exemption (b)(7)(F), which exempts from disclosure information which would "endanger the life or physical safety of law enforcement personnel", on behalf of its agents. However, the deputy attorney general withdrew this claim in the administrative appeal of this case, claiming that the agents' names were outside the scope of the request which sought only the transcripts of conversations. Yet here agents' names may appear as part of the same documents which contain the transcripts or summaries of transcripts. The Department of Justice's reading is too narrow; the request includes agents' and informants' names. A FOIA request should not require the specificity and cunning of a carefully drawn set of discovery requests, so as to outwit narrowing legalistic interpretations by the government. A citizen should be able to submit a brief and simple request for the government to make full disclosure or openly assert its reasons for non-disclosure. Because a sufficient factual case for the applicability of (b)(7)(F) has been made out on the basis of two affidavits by Special Agent Lang, the Court permits the withholding of agents' names and code names, subject to the plaintiff's right to move for revelation in those cases where the names of the agents may be directly relevant to an understanding of the nature and extent of the surveillance and thus fall within the statute's central mandate favoring disclosure. Although the plaintiff makes a cogent argument that the government is foreclosed from raising exemptions not raised and sustained at the administrative level, the Court applies the exemption as stated herein because it is applicable and because to permit further administrative determinations would be of no use to anyone.

With regard to informants' names and code numbers, their privacy interest outweighs the public interest in disclosure. However, as in the case of agents, the Court will entertain motions by the plaintiff to reveal the names of informants where it is directly relevant to an understanding of the nature and extent of the surveillance.

Finally, as to persons now deceased, there is no protectable privacy interest.[53]

### The Reliability of the Conversations

Special F.B.I. Agent Patrick Lang, in his affidavit of May 23, 1978, asserted that:

1) The conversations 'reveal participation in or knowledge of various activities on the part of the participants to the conversations. This knowledge . . . is not otherwise supported. If released, persons may retaliate against the participants. . . .'

2) Third parties, including prominent persons, were discussed without their knowledge. 'This information would be released without actual proof or supporting material concerning such activity, and if untrue could destroy the legitimate careers or reputations of these officials.'

3) Participants and those mentioned in the conversations were often identified by first or last names, set forth phonetically or by voice or 'tentative voice identification'. Mistakes by agents or similarities of names could lead to innocent persons being hurt.

With regard to paragraph one, the Court finds little reason to doubt the veracity of the statements made by the participants to each other. With regard to the second and third paragraphs, however, the Court is concerned about the accuracy of information regarding third persons not parties to the conversations.[54]

The Court in *Cerveny v. CIA,* 445 F.Supp. 772, 776 (D.D.C.1978) evinced a similar concern when it refused to order disclosure of a CIA file containing "unsubstantiated information which is derogatory and which concerns persons not connected" with the subject of the request. *Id.*

A moment's reflection upon recent political history and the excesses of the internal security investigations in the 1950's should be sufficient to signal caution in dealing with unverified derogatory material within the files of an intelligence gathering agency of government. Indiscriminate public disclosure of such material in response to a citizen's FOIA request would be as much an abuse of agency authority as an intentional release designed to damage persons. *Id.*

*Compare, Schwartz v. Department of Justice,* C.A. No. 76–2039, *slip op.* at 4 (D.D.C. Feb. 9, 1978) (refusing to disclose "unverified opinions" to plaintiff whose motives the court doubted).

The troubling question in reaching a (b)(7)(C) balance is whether the alleged unreliability diminishes the public interest in disclosure and concomitantly heightens those privacy interests, usually protected by the torts of defamation and false light privacy. *See* Restatement, Second, Torts, §§ 558 *et seq.,* 652E (1977).

*Sua sponte,* this Court raised the question whether it should order disclosure of statements in the nature of "hearsay" that are contained in the records covered by plaintiff's FOIA request in either of two situations, where said statements

a) concern the operations of an organization engaged in criminal activities; or

b) concern supposed activities by a reputable public figure which are either

---

53. *See* Restatement, Second, Torts, § 6521 (1977) (common law privacy action is a personal right of living person); *cf. id.* § 560 (defamation of deceased persons).

54. Courts have evinced concern for the privacy of third persons mentioned in investigatory records. *See, e. g., Maroscia v. Levi,* 569 F.2d 1000, 1002 (7th Cir. 1977); *Ferguson v. Kelley,* 448 F.Supp. 919, 922–26 (N.D.Ill.1977); *Tarnopol v. FBI,* 442 F.Supp. 5, 8 (D.D.C.1977); *Cerveny v. CIA,* 445 F.Supp. 772 (D.D.C.1978); *St. Louis Post-Dispatch v. FBI,* 447 F.Supp. 31, 38 (D.D.C.1977). *See also* 120 Cong.Rec. S–9330 (daily ed. May 30, 1974) (remarks of Sen. Hart)

((b)(7)(C) "intended to protect the privacy of any person mentioned in the requested files and not only the person who is the object of the investigation") *reprinted in* 1975 Source Book at 333.

Here those third persons are central to the purpose of the FOIA request, and this Court has concluded, *supra,* that there is a significant public interest which favors disclosure of matters concerning them. Also, none of them had any expectation, reasonable or unreasonable, in the privacy of these conversations; thus no fourth amendment interest can come into play as to them.

1) criminal in themselves or

2) involve associations with criminal figures or

3) concern supposed activities by a reputable public official that are designed to obtain favoritism for a particular private interest.

 The Court's main concern was whether the diminished reliability of hearsay statements lessened the public interest in disclosure when balanced against the privacy interest of the subjects of the conversations. It must be concluded on the basis of FOIA itself that there is no diminished standard of disclosure, and that under the balancing test of exemption 7(C) "hearsay" is irrelevant to the privacy interest at stake.

 To begin with, the restrictive language of the act is manifest in § 552(c) which "does not authorize withholding of information or limit the availability of records to the public except as specifically stated" therein. As plaintiff's counsel points out, "[t]he Senate Judiciary Committee explanation of the FOIA underscores the exclusiveness of the statutory exemptions:

'It is the purpose of the present bill to eliminate [the vague phrases of the predecessor statute], to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language and to provide a court procedure by which citizens and the press may obtain information wrongfully withheld.'

S.Rep. No. 813, 89th Cong., 2d Sess. 4 (1966), reprinted in *Freedom of Information Act Source Book: Legislative Materials, Cases, Articles* at 38 (Subcommittee on Administrative Practice and Procedure, Senate Committee on the Judiciary)" (Plaintiff's Memorandum, Aug. 21, 1978).[55]

---

**55.** In oral argument Mr. William M. Kunstler, on behalf of the intervenor, contended that this Court could exercise its discretion, pursuant to its inherent equitable power, to refuse to order the release of the documents in question. As reasons for this position his postulate is the illegality of the method used by the Federal Bureau of Investigation, an agency, as he described it, proven to have engaged in a national pattern of criminal acts; and the Bureau's relation with the press in what might be termed, as the Court understood the argument, a conspiratorial rapport to have whatever information it wished publicized whether or not such information was false, and/or legally or illegally obtained. He concluded that a ruling allowing the release of such information causes illegality to achieve a value where the Bureau and the press can "pillory" every human being with the imprimatur of the United States District Court. Such a situation, he urged, exists in this case and creates exceptional circumstances warranting this Court to go beyond the statute and decline disclosure. As authority he cites *Caplan v. Bureau of Alcohol, Tobacco & Firearms*, 445 F.Supp. 699 (S.D.N.Y.1978) (A manual concerning raid and search tactics withheld, although not within the express language of a specific statutory exemption, because disclosure would impair the agency's law enforcement ability).

With all respect I cannot agree with the *Caplan* court. As plaintiff's counsel points out there are a number of cases holding that "equitable discretion" is non-existent or at least very narrowly circumscribed. *Halperin v. Dept. of State*, 184 U.S.App.D.C. 124, 131, 565 F.2d 699, 706 (1977); *Tax Analysts and Advocates v. IRS*, 164 U.S.App.D.C. 243, 248, 505 F.2d 350, 355 (1974); *Robles v. EPA*, 484 F.2d 843, 847 (4th Cir. 1973); *Hawkes v. IRS*, 467 F.2d 787, 792 n. 6 (6th Cir. 1972); *Getman v. N. L. R. B.*, 146 U.S.App.D.C. 209, 217, 450 F.2d 670, 678 (1971); *Soucie v. David*, 145 U.S.App.D.C. 144, 153–54, 448 F.2d 1067, 1076–77 (1971); *Save the Dolphins v. U. S. Dept. of Commerce*, 404 F.Supp. 407, 413 (N.D.Cal.1975). The rejection of the "equitable discretion" argument is enforced by the Supreme Court's decision in *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) (so-called "snail darter" case). There the Court refused to pre-empt congressional action by a judicial decree which accords with "common sense and the public weal". The Chief Justice wrote:

"Here we are urged to view the Endangered Species Act 'reasonably,' and hence shape a remedy 'that accords with some modicum of commonsense and the public weal.' But is that our function? We have no expert knowledge on the subject of endangered species, much less do we have a mandate from the people to strike a balance of equities on the side of the Tellico Dam. Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as 'institutionalized caution.'

Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in

It seems clear the FOIA is intended to afford broad access to government records and requires that all government materials be made available unless "explicitly allowed to be kept secret" by one of the enumerated exemptions. 5 U.S.C. § 552(b). Decisional interpretations of the exemptions have been narrow, developing the rule that "disclosure, not secrecy, is the dominant objective of the Act". *Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). In short, our legislators, certainly aware of the hearsay aspect of many of the investigatory reports and the like, chose not to provide protection from revelation of this kind of information unless to do so would constitute an unwarranted invasion of privacy. Although publication of untrue statements may give rise to a defamation claim, and however distasteful it may be to leave this sole remedy to the person defamed, it cannot be said that defamation and privacy invasion are one and the same thing. *See Time v. Hill,* 385 U.S. 374, 384 n. 9, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967); *Meeropol v. Nizer,* 381 F.Supp. 29, 36 n. 6 (S.D.N.Y.1974) *reversed on other grounds,* 560 F.2d 1061 (2d Cir. 1977); *Gruschus v. Curtis Publishing Company,* 342 F.2d 775, 776 (10th Cir. 1965); *Afro-American Publishing Co. v. Jaffe,* 125 U.S.App.D.C. 70, 366 F.2d 649 (1966). The Court is concerned about the potential misuse of "hearsay"; however, the Congress intended that all records be open to public scrutiny regardless of its reliability or accuracy. The only recourse for irresponsible publication is a damage action.

Consequently, the language, legislative history, and dominant purpose of the Freedom of Information Act indicate that the public's right to know about criminal activity and the government's reaction to it is virtually unqualified under the Act.

All motions pending in this case are hereby resolved pursuant to this opinion and have been ruled upon accordingly.

the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end." *Id.* 98 S.Ct. 2301–02.

Furthermore, *Caplan* involved exemptions 2 and 7(E) which sections do not require a balance of competing policies.